**STATE of Tennessee, Appellee**

v.

**Ronald S. ANDERSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 8, 1992.

Permission to Appeal Denied by Supreme Court May 11, 1992.

---

William C. Talman, Knoxville, for the appellant.

Charles W. Burson, Atty. Gen. and Rebecca L. Gundt, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen. and H. Greeley Wells, Jr., Rebecca H. Davenport, Asst. Dist. Attys. Gen., Kingsport, for appellee.

## OPINION

BIRCH, Judge.

The Criminal Court of Sullivan County entered judgment upon a jury verdict convicting Ronald S. Anderson, the defendant, of first-degree murder[1] upon Timothy Smith and aggravated assault[2] upon Brett Kilgore. The trial court approved the sentence of life imprisonment set by the jury and imposed a six-year concurrent term for aggravated assault.

The defendant appeals as a matter of right. He challenges the legal sufficiency of the convicting evidence and raises numerous other issues: namely,

    1. Whether the jury's examination of certain exhibits was proper;

---

**1.** T.C.A. § 39–2–202 (1982).

**2.** T.C.A. § 39–2–101 (1982).

2. Whether the testimony of a certain witness exceeded the scope of proper rebuttal;

3. Whether certain actions of the district attorney constituted prosecutorial misconduct;

4. Whether the trial judge based his denial of a new trial upon improper considerations;

5. Whether the defendant was properly sentenced as a "career offender;" and

6. Whether the defendant received the effective assistance of trial counsel.

We find no reversible error and affirm the judgment of the trial court.

I

The state's evidence in this case establishes that on 22 September 1989 the defendant, Timothy Smith, and several of their mutual friends gathered at the defendant's residence to talk, listen to music, drink beer and whiskey, and smoke marijuana. Although the party started in the early afternoon, the defendant and some others then present had been drinking alcoholic beverages since approximately 8:00 that morning. Brett Kilgore and Trevor Taylor arrived at the defendant's residence sometime after 1:30 p.m. Stanley Combs and the defendant were already there. The defendant was playing with a revolver, and he started inserting live cartridges into its cylinder. Kilgore asked him not to play with the weapon; in the meantime, Smith managed to unload it and put the bullets into his pocket. He passed the weapon to Combs, who took it into the defendant's bedroom and placed it under a pillow on the bed.

Following this incident, Anderson, Kilgore, Smith, and Taylor took a drink of whiskey. Just afterwards, the defendant embraced Smith and told him, "You know, we've been through a lot together, but we'll always be good friends."

Immediately after this display of friendship, the defendant went into his bedroom and returned brandishing a .45 caliber semi-automatic weapon. He shot it at Smith's feet and fired the second shot at a bottle of whiskey on the table, shattering the bottle. The defendant then pointed the weapon at Smith, who was able to deflect the defendant's arm. The defendant then muscled Smith toward a wall and fired at least two shots at his head from a very close range. Smith fell to the floor. The defendant was about to shoot again, but Kilgore asked him not to because Smith was already dead.

Kilgore attempted to leave the residence, but the defendant grabbed him, pointed the weapon at him, and asked, "Where the hell do you think you're going?" As the defendant kept the weapon aimed at him, Kilgore pleaded for his life. The defendant threatened to turn the gun on himself and began to recite the Lord's Prayer. Before the recitation was complete, Kilgore dissuaded the defendant from suicide and convinced him that he should call his mother. He made the call to his mother. He told her: "I killed Tim," "I'll die in jail," "They will fry me," and "I'm not going to jail." After talking with his mother, the defendant laid the weapon on the couch and asked Kilgore to turn his dogs loose. The defendant told Kilgore that he was sorry for getting him into this. Additionally, he urged to Kilgore, "[I]t was self-defense, wasn't it? It was self-defense." Kilgore unloosed the dogs, left the trailer, and called the police.

In the interim between Kilgore's departure and the arrival of the paramedics, the defendant telephoned Frances Gammon, his wife's mother. After relating that he had talked to his own mother, he told her that he had killed a man in self-defense and that the dead man was lying on the floor. He asked that she tell his wife that he loved her and was sorry. Additionally, he asked that she let his wife know where some money could be located.

Jim Everhart, a volunteer paramedic on the Bristol Lifesaving Crew, was the first person to arrive on the scene. Unfamiliar with the exact location, he passed the defendant's driveway, but the defendant attracted his attention and directed him to the right driveway. Everhart asked the defendant what happened. The defendant answered, "I shot him. He's in there on

the floor." Everhart went into the trailer and observed the victim lying on the floor, dead.

Landon B. Bellamy, Jr., a Deputy Sheriff, arrived on the scene at 2:38 p.m. and observed Everhart treating the defendant, who had prostrated himself in the driveway. The defendant was subsequently transported to the hospital.

Evidence collected or photographed at the scene by investigators included a .45 caliber semi-automatic found on the couch with a cartridge in the chamber and one in the clip, a .45 caliber revolver found under a bed pillow, various spent shell casings, and pieces of a whiskey bottle. The semi-automatic weapon and the shell casings were sent to the Federal Bureau of Investigation along with other evidence for laboratory testing. Investigators also noted the existence of several bullet holes about the premises.

William Frederick McCormick, M.D., a forensic pathologist and Tennessee's Chief Deputy Medical Examiner, performed the autopsy. Based on his examination, he concluded that Smith died from a brain wound caused by a single gunshot fired from very close range. The bullet entered the back of the head at mid-point and lodged in the left side of the neck. McCormick recovered the bullet from the Smith and gave it to one of the investigators, Michael Yaniero. Tests performed on the victim's blood indicated a blood-alcohol ratio of .214 percent.

Robert W. Murphy, expert firearms examiner and a special agent with the Federal Bureau of Investigation, examined the .45 caliber semi-automatic weapon, the bullet recovered from the victim's head, and the shell casings. Based upon microscopic comparisons and other tests, Murphy concluded that the bullet taken from the victim had been fired from the .45 caliber semi-automatic weapon recovered at the scene.

Although the defendant did not testify, he called witnesses in his behalf. Stanley Combs testified that the defendant was drunk when he (Combs) arrived at the trailer prior to the homicide. David Roberts corroborated Combs' testimony.

Joseph W. Minton, M.D., offered additional testimony for the defense. He related that he examined the defendant in the emergency room at approximately 4 p.m. on 22 September 1989 and ordered him hospitalized. Tests subsequently performed on specimens acquired at about 4:30 p.m. on that day showed his blood-alcohol ratio to be .224 percent. Additionally, urinalysis revealed the presence of numerous controlled substances: namely, amphetamines, barbiturates, benzodiazepams, cannaboids, cocaine, methadone, methaqualone, opiates, and propoxyphene. Minton described the victim's barbiturate level as especially high and told of the synergistic effect produced when barbiturates are combined with alcohol. He could not, however, determine either the date or the time these drugs had been ingested.

## II

The defendant contends that the proof is, as a matter of law, insufficient to support the jury's verdict convicting him of first-degree murder and aggravated assault.

■ In light of this evidentiary challenge, the standard for appellate review is whether, after considering the evidence in a light most favorable to the state, any rational trier-of-fact could have found the essential elements of first-degree murder and aggravated assault beyond a reasonable doubt. Additionally, we are guided by Tennessee Rules of Appellate Procedure, Rule 13(e), which provides:

> Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.

■ A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913 (Tenn.1982).

■ A guilty verdict approved by the trial judge accredits the testimony of the

state's witnesses and resolves all conflicts in the testimony in favor of the theory of the state. *State v. Hatchett,* 560 S.W.2d 627 (Tenn.1978).

■ On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn from the proof. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978).

■ At the core of the defendant's challenge to the evidence is his assertion that he was incapable, because of voluntary intoxication, of premeditation. Whether premeditation is present is a question of fact for the jury to determine from all the circumstances of the case. *State v. Story,* 608 S.W.2d 599 (Tenn.Crim.App.1980). Thus, premeditation may be inferred from the circumstances surrounding the homicide; in this case the circumstances include lack of provocation, the defendant's attempt to shoot the victim again after he had been felled by the first shot and rendered helpless, and the defendant's conduct and demeanor before and after the homicide.

■ The evidence contained in the record before us is overpowering in its support of the verdict reached by the jury. The jury could reasonably conclude, as the verdict shows it did, that all of the essential elements of first-degree murder and aggravated assault were proved beyond a reasonable doubt.

We conclude that the defendant has not demonstrated the evidentiary insufficiency he has asserted. Accordingly, this issue is overruled.

### III

For his next issue, the defendant insists that the trial judge erred in his ruling regarding certain exhibits. Before the defendant presented his proof, the district attorney general requested that the jurors be permitted to examine the exhibits. The trial judge then asked counsel about the jury taking the exhibits into the jury room. Counsel for the defendant consented to this procedure, as did the district attorney general.

■ Generally, the prohibition against jurors taking exhibits into the jury room applies only during the deliberative stage of the trial. *State v. Flatt,* 727 S.W.2d 252 (Tenn.Crim.App.1986); *State v. Wright,* 618 S.W.2d 310 (Tenn.Crim.App. 1981). Even then, the consent of both parties will override the prohibition. Given the fact that the defendant consented to this procedure, and since deliberations had not yet started, we find no error in the trial judge's ruling in this regard. *See McCracken v. State,* 548 S.W.2d 340 (Tenn. Crim.App.1976).

### IV

The defendant next insists that the trial judge erroneously permitted the state to introduce rebuttal evidence.

■ As we have stated, the defendant presented the testimony of one witness who swore that before the shooting the defendant was "drunk." To rebut this, the state adduced testimony from the defendant's mother-in-law. She related that the defendant telephoned her and informed her that he had killed a man in defense of self and that the body was laying on the floor. He asked her to tell his wife that he loved her and that he was sorry. He ended the conversation by asking her to give his wife information concerning the location of a certain sum of money.

This evidence is clearly appropriate because it tends to shed light on the defendant's state of mind just after the homicide. *State v. Smith,* 735 S.W.2d 831 (Tenn.Crim.App.1987); *Nease v. State,* 592 S.W.2d 327 (Tenn.Crim.App.1979); *State v. Cozzolino,* 584 S.W.2d 765 (Tenn.Crim.App. 1979).

This issue has no merit.

### V

■ The defendant contends that the assistant district attorney general engaged in prosecutorial misconduct by suggesting in his argument that the jury could presume malice. The mention of this

brought a swift objection from the defendant's counsel. The trial judge immediately corrected the improper characterization by instructing the jury that inferences were permissible from the evidence, but not presumptions. As a further curative measure, the trial judge instructed the jury to disregard that comment. In view of the trial judge's immediate response, this mischaracterization of law was harmless error. Not error, but harmless nonetheless, was the prosecutor's argument describing certain punishment as a "smack on the hand." *See State v. Brown,* 795 S.W.2d 689 (Tenn. Crim.App.1990); *Judge v. State,* 539 S.W.2d 340 (Tenn.Crim.App.1976).

■■■ Also claimed as misconduct is the prosecutor's remark to the jury that the defendant ingested numerous drugs after the shooting, and the prosecutor's reference to "drug activity going on at the defendant's residence." Both of these arguments simply advance inferences reasonably drawn from the evidence adduced at trial. Neither misconduct nor improperly prejudicial argument is involved in these complaints.

The defendant characterizes certain omissions of the state's lawyers as prosecutorial misconduct. He claims that the prosecutors withheld evidence regarding the position of the defendant relative to the victim, and the distance from which the fatal shot was fired. Further, he asserts that the district attorneys failed to explain fully "how the level of intoxication relates to and affects the ability to form premeditation." The record before us contains no proof of cover-up, nor has the defendant provided us with any authority which establishes the district attorney's duty to make the omitted explanation. *See* Tenn.R.App.P. 27(a)(7); Rule 10(b), Rules of the Court of Criminal Appeals.

## VI

■■■ The defendant next contends that it was error for the trial judge to form his own opinion of the evidence and consider it in deciding whether to grant a new trial. This issue is not accompanied by any citation of authority and thus is not subject to review. *See* Tenn.R.App.P. 27(a)(7); Rule 10(b), Rules of the Court of Criminal Appeals; *State v. Turner,* 675 S.W.2d 199 (Tenn.Crim.App.1984).

## VII

In his next issue, the defendant asserts that his classification as a career offender is improper. We have examined the judgment form closely; we do not find that the trial judge classified the defendant as a career offender. *See* T.C.A. §§ 40–35–108, 40–35–501(g) (1990); 40–35–501(f) (1982).

Thus, we do not view this as an adjudicable issue.

## VIII

The defendant, represented at the new trial motion and on appeal by newly-selected counsel, claims that he did not receive the effective assistance of counsel at trial. He asserts that the following examples establish trial counsel's performance as substandard:

1. Counsel failed to move to limit testimony concerning the number of firearms found in the defendant's residence;

2. Counsel failed to object to Michael Yaniero's exhibiting a photograph and stating that it depicted the hole made by the bullet from the first shot fired in the residence;

3. Counsel failed to require the laying of a proper foundation for the introduction of a drive shaft, rolling papers, and scales into evidence;

4. Counsel failed to elicit testimony from Dr. Minton concerning the effect of alcohol on one's conduct;

5. Counsel concurred in a witness's characterization of a certain hole as a bullet hole; and

6. Counsel consented to the jury examination of the exhibits outside of the defendant's presence without first having requested trial court to instruct the jury not to discuss the exhibits or the trial and not to form an opinion regarding the trial [until its completion].

At the outset, we direct counsel to the case of *State v. Jimmy L. Sluder*, No. 1236, 1990 WL 26552 (Tenn.Crim.App. at Knoxville, filed Mar. 14, 1990), in which our colleague, Judge Joe B. Jones, wrote:

> Raising issues pertaining to the ineffective assistance of counsel for the first time in the appellate court is a practice fraught with peril. The appellant runs the risk of having the issue denied due to a procedural default, or, in the alternative, having a panel of this Court consider the issue on the merits. The better practice is to *not* raise the issue on direct appeal under the circumstances. The issue can be subsequently raised in a post-conviction proceeding if the appellant's direct appeal, as here, is not successful.

█ With that behind us, the right of an accused in a criminal prosecution to the effective assistance of counsel is clearly guaranteed by the Sixth Amendment to the Constitution of the United States and Article 1, § 9 of the Constitution of the State of Tennessee.

█ The appropriate test is whether the performance of trial counsel was "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975).

The United States Supreme Court has held that the burden of proof upon a defendant asserting ineffective assistance of counsel in a criminal case is two-fold: (1) he must show that the representation was deficient, and (2) he must show that the deficiency prejudiced the defense, thereby depriving the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Best v. State*, 708 S.W.2d 421 (Tenn.Crim.App. 1985).

The defendant was represented at trial by Robert C. Newton and Gilbert E. Torbett, Esquires; Newton began practicing law in 1977 and has represented approximately twelve persons before juries on murder charges. Included in that number is at least one death penalty case. Torbett,

a general sessions judge for more than twenty years, has engaged in the private practice of law since his resignation from the bench in 1988.

Newton testified at the hearing on the motion for new trial. He related that he and co-counsel had developed a defense theory in which the defendant's inability to premeditate because of intoxication was the linchpin. Specifically, Newton testified that in his opinion, as the distance from which the fatal shot was fired decreased, the more difficult it became to advance their theory of absence of premeditation.

Additionally, he testified that he deliberately allowed testimony concerning the firearms on the premises to be introduced without objection because he viewed such evidence as consistent with the defense theory.

As for the jury's examination of the exhibits, Newton again stated that allowing the jury to view the exhibits privately was intentional. He admitted, however, that he overlooked the opportunity to request that the jury be instructed regarding their conduct while examining the exhibits.

█ It is not our task to second-guess tactical choices. *Vermilye v. State*, 754 S.W.2d 82 (Tenn.Crim.App.1987).

█ On review of a trial judge's decision denying post-conviction relief,[3] the Court of Criminal Appeals must not reweigh or re-evaluate the evidence or substitute its inferences for those drawn by the trial judge, and questions concerning credibility of witnesses, weight and value to be given their testimony, and factual issues raised by evidence are resolved by trial judge, and defendant has burden in the Court of Criminal Appeals of illustrating why the evidence contained in the record preponderates against the judgment entered by the trial judge. *Black v. State*, 794 S.W.2d 752 (Tenn.Crim.App.1990).

█ It is apparent to us that appellate counsel would not have represented Anderson at trial in exactly the same manner as did Newton and Torbett. But it is

---

**3.** Although most claims of ineffective assistance of trial counsel come by way of post-conviction petition, the same criteria apply when the claim comes, as in this case, on direct appeal.

also apparent that the decisions and judgments made by trial counsel were based upon proper investigation and a thorough understanding of applicable law. Their strategy and tactics were carefully considered.

From the record before us we conclude that the defendant has not carried his burden of demonstrating that the evidence preponderates against the judgment of the trial court on this issue, and it is overruled.

It results that the defendant has not demonstrated the evidentiary insufficiency, the reversible error, or the ineffective assistance of counsel he has asserted. The judgment of the trial court is, therefore, in all things affirmed.

WADE, J., and WILLIAM P. NEWKIRK, Special Judge, concur.