IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1998 SESSION

FILED

August 28, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9705-CR-00166 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. J. RANDALL WYATT, JR., |
| CHARLES B. TREADWELL, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Assault, Simple |
| | ) | Assault and Stalking) |

**FOR THE APPELLANT:**

**F. THOMAS GIAMBATTISTA**
**(At Trial)**
1008 17th Avenue, S.
Nashville, TN 37212

**JOHN T. CONNERS, III**
**(On Appeal)**
P.O. Box 1451
Franklin, TN 37065-1451

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**DARYL J. BRAND**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**VICTOR S. JOHNSON, III**
District Attorney General

**STEVE R. DOZIER**
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue, North
Nashville, TN 37201-1649

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Charles B. Treadwell, was convicted by a Davidson County jury of one (1) count of aggravated assault, one (1) count of simple assault and one (1) count of misdemeanor stalking. He was sentenced to five (5) years for aggravated assault and eleven (11) months and twenty-nine (29) days each for simple assault and stalking. On appeal, he brings the following issues for this Court's review:

(1)     whether the evidence is sufficient to support his convictions;

(2)     whether he was denied his right to a unanimous jury verdict on the stalking offense; and

(3)     whether he was denied effective assistance of trial counsel.

After a thorough review of the record before this Court, we find no error. Accordingly, the judgment of the trial court is affirmed.

**FACTS**

In late 1994, S.L.,[1] who was thirteen (13) years of age, met the defendant, who was thirty-one (31) years of age, and the two became friends. According to S.L., their relationship started out as friendship, but eventually turned into "something more." They wrote letters to each other, talked on the telephone, and S.L. reported that they kissed and "held hands."

In early February 1995, Linda Lawson, S.L.'s mother, learned of her daughter's relationship with the defendant. Lawson confronted defendant and told him to stay away from her daughter. However, defendant and S.L. continued the relationship.

In March 1995, while S.L. was speaking with defendant on the telephone, she told defendant that she had an argument with her mother that evening.

---

[1] It is the policy of this Court not to reveal the names of minor victims.

2

Defendant became incensed and told S.L. that he would kill her mother. Defendant's anger frightened S.L., and she told defendant that she wanted to end their relationship.

On April 4, Lawson was driving Mary Maloney[2] to school when she noticed defendant following her very closely in his car. Lawson pulled into a gas station parking lot, and defendant pulled in behind her. When Lawson exited her car and walked to the pay phone, defendant followed her. Defendant then raised up his shirt, revealing the butt of a gun and said, "bitch, when I see you out by yourself, I'll shoot you." Lawson testified at trial that she was "very scared" and thought that defendant might shoot her "right then and there." Defendant then returned to his car and drove away.

On April 12, Lawson's sister, Barbara Smith, took S.L. and some friends to a local Taco Bell. Smith and S.L.'s sister, Amanda Tenpenny, were waiting outside in the car while the other girls were ordering their food. Defendant and a friend drove into the parking lot, and Tenpenny pointed him out to Smith. S.L. and the other girls testified that defendant walked into the restaurant and began screaming, cursing and wildly waving his arms. Because Smith knew about defendant's relationship with her niece, she walked inside the restaurant and asked defendant to leave S.L. alone. Defendant retorted, "I want [S.L.]. If you don't get out of my way, I'll blow your f_ing brains out." Smith testified that she was terribly frightened because she was aware of defendant's previous threats to kill her sister. Smith and the young girls left the restaurant soon thereafter.

On May 5, S.L. was on the playground at her school when she noticed defendant's car parked on the street beside her school. Defendant lowered his window and stared at S.L. When defendant began talking to her, she jumped onto a fence to get away from defendant, and defendant drove away. S.L. immediately reported this to school authorities, and the police were summoned.

On May 23, S.L. went to Shelby Park after school with her cousin and some

---

[2] As an occupation, Lawson provided care for young children. Maloney was one of the children under Lawson's care and was twelve (12) years old at the time of trial.

3

friends. Once again, she noticed defendant's car nearby. When defendant realized that the children had spotted him, he sped away in his car.

On the night of May 25, defendant repeatedly drove up and down the street "all night" in front of S.L.'s home. Although S.L. was in her room most of the evening, she recognized the car from her window and identified it as being the defendant's.

As a result of the May incidents, S.L. testified that she suffered from nightmares, fearing that defendant was in her house. S.L. had dreams that defendant was trying to "get us." S.L. was afraid that defendant might kill her or her mother.

The defendant's father (Treadwell) testified for the defense. He stated that on April 4, defendant was at his home all day assisting him paint his house. Treadwell testified that defendant's car was not working on that day, so he could not have been following Lawson in his car.

Treadwell further testified that on May 5, he saw the defendant at the post office with a friend around the same time defendant was alleged to have been watching S.L. at her school. Treadwell also stated that defendant was at home all day on both May 23 and 25.[3]

Jim Liner, a friend of the defendant, testified for the defense as well. He stated that he waxed defendant's car on May 23, and defendant was with him from approximately 5:00 p.m. to 8:30 p.m.

The jury returned guilty verdicts for the aggravated assault of Lawson on April 4, the simple assault of Smith on April 12, and stalking S.L. as a result of the incidents on May 5, May 23 and May 25. Defendant now brings this appeal as of right pursuant to Tenn. R. App. P. 3.

## SUFFICIENCY OF THE EVIDENCE

---

[3] At the hearing on the motion for new trial, it was established that defendant's father was actually mistaken as to defendant's whereabouts on these days. In fact, defendant worked eight (8) hours on both days.

In his first issue defendant contends that the evidence is insufficient to sustain the jury's finding of guilt on all three offenses. The crux of his argument is that the predicate acts for the offenses, while arguably offensive, do not constitute criminal conduct. Therefore, he asserts that even taking the state's evidence as true, he is not guilty of a criminal offense.

**A.**

When an appellant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, reevaluate the evidence, nor substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

**B.**

In Count One, defendant was charged with the aggravated assault upon Lawson by the use or display of a deadly weapon. Aggravated assault is defined as intentionally or knowingly causing "another to reasonably fear imminent bodily injury" while using or displaying a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2) (1991), 39-13-102(a)(1)(B) (Supp. 1994).

On April 4, Lawson noticed the defendant "tailgating" her car. When she pulled her car into a parking lot, defendant followed her. Defendant got out of his car, walked to the pay phone where Lawson was standing and began "yelling" at Lawson. He then raised his shirt, exposing the butt of a gun, and threatened to kill Lawson.

5

Defendant argues that his words, "when I see you out by yourself, I'll shoot you" was a threat "to take action in the future." Therefore, it would have been unreasonable for Lawson to have feared <u>imminent</u> bodily injury. However, Lawson testified that she was "very scared" by defendant's actions and thought that defendant might shoot her "right then and there." There was sufficient evidence for a rational trier of fact to conclude that defendant caused Lawson to "reasonably fear imminent bodily injury" while displaying a deadly weapon.

This issue is without merit.

## C.

Defendant was charged in Count Two with the simple assault of Smith. Assault is defined as intentionally or knowingly causing another "to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2) (1991).

There was testimony at trial that on April 12 defendant walked into the Taco Bell restaurant screaming, cursing and wildly waving his arms. Smith testified that when she attempted to ask the defendant to leave her niece alone, he responded, "[i]f you don't get out of my way, I'll blow your f__ing brains out."

Defendant claims that while this response was impolite, this does not constitute an assault. However, defendant was screaming and cursing loudly in the restaurant, and Smith was aware of defendant's previous threats to kill her sister. Smith testified that she was "just scared he would do something to some of us. I mean, you know, he's acting plum crazy." Smith also stated that defendant was acting like "a wild man." The evidence was sufficient for the jury to find that defendant caused Smith to "reasonably fear imminent bodily injury."

This issue has no merit.

## D.

Count Three of the indictment charged the defendant with stalking. Tenn. Code Ann. § 39-17-315(a) (Supp. 1994) provides as follows:

(1) [a] person commits the offense of stalking:

> (A) [w]ho repeatedly follows or harasses another person
> with the intent to place that person in reasonable fear of
> a sexual offense, bodily injury or death;

6

(B) [w]hose actions would cause a reasonable person to suffer substantial emotional distress; and

(C) [w]hose acts induce emotional distress to that person.

(2) As used in this subsection:

(A) "Follows" means maintaining a visual or physical proximity over a period of time to a specific person in such a manner as would cause a reasonable person to have a fear of a sexual offense, bodily injury or death;

(B) "Harasses" means a course of conduct directed at a specific person which would cause a reasonable person to fear a sexual offense, bodily injury, or death, including, but not limited to, verbal threats, written threats, vandalism, or unconsented-to physical contact; and

(C) "Repeatedly" means on two (2) or more separate occasions.

S.L. testified that on three (3) separate occasions, defendant was watching her at school, at Shelby Park and at her home. S.L. was thirteen (13) years old, and defendant was thirty-one (31) years of age. S.L. believed that defendant was capable of violence in light of his prior threats to kill her mother and his assault upon her aunt. S.L. began having nightmares that defendant was in her house and feared for her own safety as well as that of her mother. As a result of these incidences, S.L. was forced to undergo counseling, and her school work suffered.

We find that there is sufficient evidence that the defendant "followed" S.L. repeatedly with the intent to place her in "reasonable fear of a sexual offense, bodily injury or death." Furthermore, we also find that defendant's actions would cause a reasonable person to suffer emotional distress, and S.L. did suffer emotional distress as a result of defendant's actions. The evidence is sufficient to support defendant's conviction for stalking.

This issue is without merit.

## UNANIMOUS JURY VERDICT

In his next issue, defendant contends that he was deprived of his right to a unanimous jury verdict on the offense of stalking. He argues that because the

7

stalking charge involved three alleged instances of conduct, there was a possibility that the jury was not unanimous as to the occurrence of each instance. He claims that the trial court should have instructed the jury to "specifically identify each [stalking] occasion as to which the jury was unanimous as to its occurrence and then used by the jury to support its conclusion of the Defendant's guilt of this offense."

The Tennessee Supreme Court recently decided this issue in the case of State v. Hoxie, 963 S.W.2d 737 (Tenn. 1998). In that case, the defendant claimed that he was denied his right to a unanimous jury verdict because the state was not required to elect among incidences of stalking at the close of its proof. The Supreme Court disagreed, finding that in crimes such as stalking and harassment, there is no requirement that the state elect which incident of stalking it was relying upon for a conviction. Id. at 743.

Although defendant frames his argument in terms of an improper jury instruction, we are not persuaded that defendant's argument is distinguishable from that in Hoxie. Therefore, in accordance with Hoxie, we find no error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his final issue, defendant contends that he received ineffective assistance of trial counsel.[4] In making this argument, defendant alleges several instances of ineffective assistance. While arguing that each error prejudiced his case, he also claims that the cumulative effect of these errors deprived him of the effective assistance of counsel.

### A. Allegations

At the hearing on the motion for new trial, defendant, represented by newly-appointed counsel, alleged many errors committed by trial counsel, including failure

---

[4] This Court has previously ruled that raising the issue of ineffective assistance of counsel on direct appeal is a "practice fraught with peril." Thompson v. State, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997).

to fully develop the defense theory, failure to properly question defendant's father on direct examination, denying defendant his right to testify, failure to secure a photographic line-up of defendant for identification purposes, failure to call alibi witnesses, and failure to inspect the crime scene.

In its written order denying the motion for new trial, the trial court found that defendant received effective assistance of counsel. Further, the trial court found that defendant had not shown that he was prejudiced by any of the alleged instances of ineffective assistance. Therefore, the trial court denied the motion for new trial on the basis of ineffective assistance of trial counsel.

### B. Standard of Review

The findings of fact made by the trial court relative to an ineffective assistance of counsel claim are binding upon this Court unless the evidence in the record preponderates against these findings. *See* State v. Anderson, 835 S.W.2d 600, 607 (Tenn. Crim. App. 1992). Questions concerning the credibility of witnesses, weight and value to be given their testimony, and factual issues raised by the evidence are resolved by the trial court. Id. at 607. This Court must not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the trial court. Id. The defendant bears the burden of establishing that the evidence contained in the record preponderates against these findings. Id.

This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

The test in Tennessee in determining whether counsel provided effective assistance is whether his performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d at 936. The

9

petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065; Alley v. State, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997); State v. Williams, 929 S.W.2d 385, 389 (Tenn. Crim. App. 1996).

## C. Defense Strategy

In his first claim of ineffective assistance of counsel, defendant argues that trial counsel did not fully develop the defense strategy to the jury. Defendant agrees with trial counsel's overall defense strategy that (1) the alleged conduct did not constitute a criminal defense, and (2) defendant had an alibi for many of the dates in question. However, defendant argues that the state's witnesses were fabricating their testimony and trial counsel should have provided the jury with their motivation to lie.

Trial counsel testified that he believed that the witnesses' motivation to fabricate their testimony was "evident to any reasonable human being, that the motive was that this woman and her family did not like the idea that a 33-year old man was either dating or having a romantic relationship with a 13-year old. I mean that goes without saying." He stated that the idea of the state's witnesses lying was implicit in the defense, and he alluded to that fact in his opening and closing remarks.

The trial court found that trial counsel "diligently prepared for trial" and performed "more than adequately" in his presentation of a defense to the jury. Moreover, trial counsel's decision as to how the defense theory is presented to the jury was a tactical decision and is entitled to great deference. *See* Goad v. State, 938 S.W.2d at 369. Defendant has not proven that the evidence preponderates against the trial court's finding of effective representation. Nor has defendant established that he was prejudiced by this alleged error.

This issue is without merit.

## D. Key Witness

Defendant also complains that trial counsel erroneously treated his father as the "key witness" for the defense. He claims that he himself should have been the

"key witness" as to his alibis on the questioned dates, and his father should have testified to corroborate his story.

However, as the state correctly points out, Treadwell's testimony was crucial in that defendant merely testifying that he was not present on the dates in question would have carried little weight with the jury. Furthermore, this was a strategical decision made by trial counsel. This Court is not at liberty to measure trial counsel's decisions by "20-20 hindsight." Hellard v. State, 629 S.W.2d at 9.

This issue has no merit.

### E. Father's Testimony

Defendant further argues that trial counsel provided ineffective assistance in his direct examination of Treadwell. Treadwell testified on direct examination that defendant was at home all day on both May 23 and May 25, when in fact defendant worked on both days. This testimony was contrary to Treadwell's testimony at the preliminary hearing and Treadwell's statements to counsel prior to the trial where Treadwell stated that defendant was working on May 23 and May 25. Defendant claims that trial counsel should have attempted to refresh Treadwell's memory as to his prior testimony when he began giving erroneous testimony. Defendant contends that, as a result, defendant did not testify for fear of contradicting his father's testimony.

At the hearing on the motion for new trial, trial counsel testified that he fully prepared Treadwell for his testimony. He reviewed Treadwell's preliminary hearing testimony with him, including the dates of the offenses and the facts and circumstances of defendant's alibi. Although Treadwell erroneously testified as to defendant's whereabouts on May 23 and May 25, trial counsel felt that because the jury was not aware of defendant's actual whereabouts, there was no reason to attempt to correct Treadwell's mistake by refreshing his memory. Trial counsel felt that refreshing Treadwell's memory would, in effect, impeach his testimony.

The trial court found no ineffective assistance in trial counsel's direct examination of defendant's father. The trial court stated that trial counsel "acted in the manner he deemed appropriate and in the petitioner's best interest under the

11

circumstances presented to him at the time." This Court will not second guess a strategic decision made by trial counsel to be in the best interest of his client at the time. Defendant has not shown that the evidence preponderates against the trial court's finding of effectiveness on this issue, nor has he demonstrated prejudice.

This issue has no merit.

### F. Defendant's Failure to Testify

In a related issue, defendant asserts that he was effectively denied his right to testify due to the foregoing error. As defendant was deciding whether to testify, trial counsel warned him not to alter his testimony to "match" his father's testimony as to the erroneous facts. Trial counsel explained to him that, as an officer of the court, he could not allow defendant to offer perjured testimony. Defendant argues that trial counsel's warning that he would notify the court of defendant's perjury "destroyed the attorney-client trust or bond . . . and effectively denied the Defendant his right to testify."

Trial counsel testified that he did not believe that it was in defendant's best interest to testify. Counsel felt that the major points of the defense theory had been brought before the jury through the state's witnesses and defendant's father. He felt that defendant's case would be harmed if defendant were to contradict his father on the witness stand. Furthermore, trial counsel was concerned that defendant would simply attempt to align his testimony with that of his father. Counsel testified that he was not accusatory in his warning, but merely informed defendant "[j]ust so he knew that if he was thinking about doing that, that there are repercussions."

The trial court found that trial counsel made an "informed and reasonable recommendation" to the defendant not to testify. Further, because defendant placed the decision of whether he would testify in his attorney's hands, the trial court found that defendant was not denied his right to testify.

Defendant has not shown that the evidence preponderates against the trial court's finding that trial counsel's recommendation to defendant not to testify was informed and reasonable. Once again, this was a strategic decision which this Court may not second guess.

12

Moreover, we note that trial counsel was under an ethical duty to dissuade his client from offering perjured testimony. "In the representation of a client, a lawyer shall not . . [k]nowingly use perjured testimony or false evidence." Sup. Ct. Rule 8, DR 7-102(A)(4). "A lawyer who receives information clearly establishing that . . . [t]he client has, in the course of the representation, perpetrated a fraud upon a person or tribunal, shall promptly call upon the client to rectify the same, and if the client refuses or is unable to do so, the lawyer shall reveal the fraud to the affected person or tribunal, except when the information is protected as a privileged communication." Sup. Ct. Rule 8, DR 7-102(B)(1).

We conclude that the defendant chose not to testify after deferring to trial counsel's judgment. Moreover, this choice was not tainted by trial counsel's caveat of the consequences of offering perjured testimony.

This issue has no merit.

### G. Photographic Line-up

Defendant further alleges that trial counsel was ineffective for failing to request that Mary Maloney be required to view a photographic line-up to determine whether she could identify defendant as the man who assaulted Lawson on April 4. Defendant contends that Maloney's testimony might have excluded defendant as the man who assaulted Lawson, thus bolstering defendant's theory that Lawson was fabricating her testimony.

There is no evidence in the record as to whether Maloney would have identified defendant. Therefore, defendant cannot demonstrate that he was prejudiced by this alleged error. *See* Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).

This issue has no merit.

### H. Failure to Cross-Examine Mary Maloney

Similarly, defendant argues that trial counsel provided ineffective assistance for failing to cross-examine Mary Maloney at trial. He claims that "[t]he potential benefit [of cross-examination] could have been significant if the witness had identified someone else or was not able to identify the Defendant."

13

Maloney was not called to testify at the hearing on the motion for new trial, and there is no evidence in the record as to what "beneficial" testimony trial counsel could have elicited on cross-examination. This Court cannot speculate as to what the witness' testimony would have been on cross-examination. *See* Black v. State, 794 S.W.2d at 757-58.

This issue is without merit.

### I. Witness Bloodworth

Defendant also argues that trial counsel rendered ineffective assistance by failing to call Robert Bloodworth as a witness at trial. Defendant claims that Bloodworth could support his alibi for May 5 and could additionally support the defense theory on Lawson and her family's motivation to fabricate their testimony.

Trial counsel testified that he attempted to locate Bloodworth on many occasions. Defendant did not provide him with Bloodworth's phone number or exact address, but merely the street name. Trial counsel instructed defendant to do whatever he could to locate Bloodworth and have Bloodworth call trial counsel. However, Bloodworth never contacted him. Furthermore, Bloodworth had a capias out on him during the time of trial which was not served until after the conclusion of trial.

The trial court found that trial counsel made a diligent effort to locate Bloodworth, but to no avail. Therefore, trial counsel was not ineffective for failing to call this witness at trial.[5] Defendant has not shown that the evidence preponderates otherwise.

This issue has no merit.

### J. Employment Records

Defendant further complains of trial counsel's failure to obtain defendant's employment records for May 23 and May 25, which establish that defendant worked on both days. He claims that these records would corroborate his alibi that he was not near S.L. on those dates.

---

[5] Although Bloodworth testified at the hearing on the motion for new trial that defendant was with him during the afternoon of May 5, it is noteworthy that he and defendant were co-defendants in a pending criminal prosecution at the time of trial.

Trial counsel stated that he attempted to contact the defendant's supervisor, but was not able to get in touch with her. He also testified that defendant never informed him that he was employed through a temporary service, which is where the records were obtained.

Regardless, defendant cannot show that he was prejudiced by his attorney's failure to secure his employment records. The records indicate that defendant left work at 3:30 p.m. on both May 23 and May 25. The May 25th incident was alleged to have taken place at night. Therefore, the employment records would not serve as alibi evidence on May 25. Furthermore, although there was testimony that the May 23 incident occurred around 3:00 p.m., S.L. testified that it was dusk when she saw the defendant lurking nearby. Because defendant's employment records do not affirmatively establish an alibi for either date, defendant cannot prove prejudice.

This issue has no merit.

### K. Witness Duke

Defendant also maintains that trial counsel was ineffective for failing to call his auto mechanic, Russell Duke, to testify at trial. Defendant contends that Duke's testimony would show that defendant's car was inoperable on April 4, thus supporting defendant's alibi defense.

Attached to the motion for new trial was an affidavit signed by Duke which stated that defendant's automobile was in extremely poor condition on April 3, 1995. Duke further attested that he changed the transmission fluid in defendant's car on that day and, by changing the fluid, there was a "concern that the transmission would shut down completely."

However, there is nothing in Duke's affidavit to support the assertion that defendant's automobile was completely inoperable on April 4. Therefore, defendant is not able to demonstrate prejudice.

This issue has no merit.

### L. Crime Scenes

In his next allegation of ineffective assistance of counsel, defendant claims that trial counsel erroneously failed to inspect the crime scenes. He argues

15

generally that inspection of the crime scenes would have assisted trial counsel in his cross-examination of the state's witnesses.

However, defendant does not indicate what favorable testimony could have been elicited had trial counsel inspected the crime scenes. As such, he cannot show that he was prejudiced by this alleged failure.

This issue is without merit.

## M. Cumulative Errors

Finally, defendant argues that the cumulative effect of the foregoing errors effectively deprived defendant of his right to ineffective assistance of counsel. However, because we find no error, we must respectfully disagree. The trial court found that trial counsel's representation was well within the competence mandated by Baxter and Strickland. This Court sees no reason to disturb the trial court's ruling.

This issue has no merit.

## CONCLUSION

The evidence is sufficient to sustain the jury's findings of guilt for defendant's convictions for aggravated assault, simple assault and stalking. Furthermore, the defendant was not denied his right to a unanimous jury verdict for the stalking conviction. Moreover, defendant has not proven that the evidence preponderates against the trial court's finding that he received effective assistance of counsel at trial. Accordingly, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

16

_____

**CURWOOD WITT, JUDGE**


_____

**LEE MOORE, SPECIAL JUDGE**

17