IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 15, 2020

**STATE OF TENNESSEE v. JAMIE PAUL DENNIS**

**Appeal from the Circuit Court for Stewart County**
**No. 2018-CR-4      Larry J. Wallace, Judge**

_____

**No. M2018-01894-CCA-R3-CD**

_____

The Defendant, Jamie Paul Dennis, was convicted by a Stewart County Circuit Court jury of attempted rape of a child, a Class B felony, and attempted incest, a Class D felony. He was sentenced to respective terms of twenty-eight years and twelve years, to be served consecutively in the Department of Correction. On appeal, the Defendant argues that the evidence is insufficient to sustain his convictions and that the trial court erred in failing to provide a modified unanimity jury instruction where the State did not make an election of offenses. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. THOMAS T. WOODALL, J., not participating.

William B. Lockert, III, District Public Defender, and Timothy J. Richter (on appeal), Assistant Public Defender; and Markley Preston Runyon (at trial), Erin, Tennessee, for the appellant, Jamie Paul Dennis.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; W. Ray Crouch, District Attorney General; and Erin D. Bryson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was charged with one count of rape of a child, four counts of rape, and five corresponding counts of incest, as a result of allegations of inappropriate sexual contact with his daughter during various timeframes between November 2016 and April

2017. After a jury trial, the Defendant was convicted of the lesser-included offense of attempted rape of a child in the first count and the lesser-included offense of attempted incest in Count Six. He was acquitted on the remaining charges. The proof from the Defendant's trial is summarized below.

Tina Neil, the Defendant's mother, testified that the Defendant is the victim's father. Throughout the early years of the victim's life, the victim lived with various family members and foster families before the Defendant obtained custody of her following his release from prison stemming from other crimes.

Ms. Neil recalled that there came a time when she observed that the victim "was just always hanging on [the Defendant], . . . [j]ust touching him[,]" or sitting on his lap. She felt that it was not appropriate behavior in public and asked the Defendant not to have the victim sit on his lap at the restaurant she owned. The victim began living with Ms. Neil about a year and a half before the trial, and shortly after the victim moved in with her, the victim made a disclosure that prompted Ms. Neil to contact the sheriff's department. When asked about whether the victim was honest, Ms. Neil said that she presently felt that the victim was honest but that the victim had been less honest when she was younger "[l]ike most children."

The victim testified that she was fourteen years old at the time of trial and had met the Defendant, her father, when she was eleven or twelve years old at the end of sixth grade in 2016. She lived with her maternal grandfather prior to meeting and moving in with the Defendant. She recalled that she lived in three different residences with the Defendant— "[f]irst at Rebecca's house and then across from Lance[']s and then in Big Rock." The events at issue occurred when they lived in the latter two residences.

The victim recalled that the residence across from Lance's was a house trailer in which the Defendant's girlfriend, Chasity, also lived with them. The Defendant's father resided with them at times as well. The victim had her own bedroom there. The victim felt that her relationship with the Defendant was a normal father-daughter relationship at first, but then "[t]hings started acting different as if like I was his girlfriend or something" and progressed into a sexual relationship.

The victim recalled that she was twelve years old when the Defendant first had sex with her. She said that it occurred when they lived in the trailer across from Lance's between 5:00 and 6:30 a.m. when he woke her up to get ready for school. She remembered that it was on a Wednesday after Thanksgiving but before her thirteenth birthday on December 7, 2016. She recalled that it was still dark but not so dark that she could not see, and the Defendant began hugging and kissing her before removing her shorts and underwear. She tried to move away, but the Defendant "kept doing what he was doing."

- 2 -

He touched her private areas, both outside and inside her body. The Defendant touched her for a few minutes before he inserted his penis into her vagina. She could not tell whether the Defendant ejaculated. She said that Chasity, the Defendant's girlfriend, was in the room she and the Defendant shared, likely asleep. The victim stated that she felt "[d]ifferent" after the first rape, "[l]ike, everything changed." She recalled that the intercourse was painful and that she did not want to have sex with the Defendant. Her private areas hurt for a couple hours afterwards.

The victim testified that the Defendant had sex with her often, estimating that it happened ten to twenty times a month, always in the morning before school.[1] Asked if she consented to the subsequent sexual encounters, the victim responded, "[y]es and no," elaborating that she consented "[o]nly to keep peace and keep everything from being a disaster or yelling or throwing or anything." She said that the Defendant did not threaten her, but she was afraid of what might happen.

The victim testified that she was not on birth control at the time of the first sexual encounter, but she started taking it the following February at the Defendant's direction because he began ejaculating inside of her instead of withdrawing as he had previously done. She knew that the Defendant ejaculated inside of her because he told her that he did, and she saw semen on her private areas. The Defendant instructed her to clean herself afterwards, and he never wore a condom. The victim recalled that the Defendant instructed her not to tell anyone about the abuse the "very first couple times."

The victim then identified several Facebook messages sent between the Defendant and herself, which were entered as exhibits at trial. In one message, the Defendant wrote, "I'm not making you feel uncomfortable sitting on me like this, am I," and the victim responded, "No." The Defendant wrote, "Okay, good. You promise," and the victim said, "yeah." The victim recalled that her relationship with the Defendant became almost like that of a girlfriend and that some of the messages were more of a "girlfriend" in nature. She said that her contact name was listed as "Daddy's Baby" in the Defendant's phone and that he often called her that. The victim also identified a picture of herself that she sent to the Defendant at his request.

In another message, the Defendant wrote, "Did I love on you too much," and the victim said, "No." He then asked, "I didn't make you feel uncomfortable," and the victim responded, "No." The Defendant then said, "Okay. If I ever do, you tell me, okay. I just love you[.]" In another message, the Defendant wrote, "What made you kiss me[?]" The

---

[1] The victim testified in more detail about some of the other instances of rape that occurred after her thirteenth birthday, but we will not recount her testimony in this regard as the Defendant was acquitted on those charges.

victim explained that the Defendant had asked her to kiss him on the lips, which she did not want to do at first but eventually complied. The victim confirmed that the Defendant sent the message about the kiss after she had kissed him on the lips.

In another exchange, the Defendant wrote, "Why would you ask me that?" The victim responded, "Because today while you . . . and Chasity was together, I saw you sucking the lips off her I just wanted to know." The Defendant responded, "It's okay, Baby. That's part of it, but you will always be first in my life." The victim replied, "Not always, and it's not like you should be sucking the lips off of her either. It's nasty seeing all that. Yuck." The Defendant responded, "Well, you kissed me, and I loved it too." The victim replied, "Yeah. I know, but I did that so you know that I will kiss you and . . . I love you."

In another message, the Defendant wrote, "If you don't like giving me a kiss, I will understand." The victim wrote a message saying, "I do love you, but this calling you daddy isn't as easy as kissing you." On another occasion, the victim sent another picture of herself to the Defendant at his request, and the Defendant wrote, "You're mine," and the victim replied, "I'm talking to a bunch of guys and you're one of them," and the Defendant said, "I better be your only one[.]"

In another message, the Defendant wrote, "I need a pic, baby," and after the victim sent him one, he wrote, "You going to give me a bunch of loving and kisses when you get here," to which the victim responded, "Yeah." In another exchange, the Defendant wrote, "Kisses, kisses, kiss, kiss, kiss, kiss, kiss, kiss," and the victim said, "Thanks." The Defendant wrote, "I need kisses, not on the cheek either[,]" and the victim replied, "Kiss, kiss, kiss, kiss, kiss, kiss, kiss, kiss, kiss on the lips." The Defendant then wrote, "Oh, yeah. Thank you, my baby," and the victim responded, "Is that good[?]" The Defendant replied, "Always. No more kisses on the cheek, okay. And no more dry kisses. Lick your lips first[,]" and the victim replied, "Whatever." The Defendant said, "Please[,]" and the victim responded, "I give you kisses however I give them." The Defendant then wrote, "Okay, baby. But please, you're mine, so lips only, okay?" The victim responded, "Okay. Okay. I love you[,]" and the Defendant wrote, "I love you too."

The victim confirmed that she wrote out a statement about what had happened between her and the Defendant. Although she did not recall at the time of trial, she acknowledged that she had written in her statement that at one point the Defendant had asked her to suck his penis and she refused.

Sheriff Deryk Wyatt, with the Stewart County Sheriff's Office, testified that he took over the investigation in the case after the initial investigator resigned from the sheriff's office. Sheriff Wyatt interviewed the victim to establish a timeline for the allegations, but

- 4 -

a physical examination was not performed on her because the lapse in time between the sexual abuse and disclosure to law enforcement made the possibility of finding DNA or physical trauma very slim. Sheriff Wyatt said that the initial investigator interviewed the Defendant, and that he had reviewed the recording of the interview.

At trial, the thirty-eight-year-old Defendant acknowledged that he had prior convictions for forgery, burglary, vandalism, filing a false report, and theft. He served time in prison, but after he was released sought to obtain custody of the victim, who was living with her grandfather at the time. He eventually obtained full custody of her in 2016. He said that it was hard to make up for the lost time, and it took the victim a while to call him "dad" rather than "father." When he first obtained custody of the victim, he was living in a trailer park across the road from Lance's in Stewart County with his wife, Chasity Dennis. Ms. Dennis's other children stayed with them on the weekends. The Defendant's father lived with them as well.

The Defendant recalled that for six or seven months around the timeframe of the allegations, he worked at a job in Fort Campbell and had to leave his house at 3:30 a.m. His wife and father would be at home with the victim after he had gone to work. He then took employment with a tree company in town for which he had to leave around 5:30 a.m. to go to work. The Defendant said that he and his wife alternated waking up the victim for school and that his wife was "[a]lways" awake regardless of who awakened the victim.

The Defendant denied raping the victim. He claimed that the text messages saying "[k]iss, kiss, kiss, kiss, kiss" that he sent to the victim were "just something that was between father and daughter . . . there's nothing ever meant by it." He said the texts did not mean anything sexual. Contrary to his mother's testimony, the Defendant claimed that the victim never sat on his lap at his mother's restaurant. The Defendant denied that he had ever threatened to "whip" the victim.

The Defendant testified that he disciplined the victim for inappropriate conduct on social media by taking away her phone, which angered the victim. They argued about it daily. The victim's grades began to fall, so the Defendant enrolled her in tutoring. The Defendant said that the victim never told him that someone else had sexually abused her.

The Defendant recalled that the victim stayed with his mother out of state for two weeks over spring break and then again for the entire summer break. In June of 2017, the victim called to wish him a happy Father's Day and apologize for being away. During the conversation, the Defendant asked the victim for the password to her computer because he had found letters that she had written to her boyfriend, and he "wanted to further investigate in her computer." The victim refused to give him the password.

The Defendant said that he fully cooperated with the investigation and that he had no idea why the victim would make such allegations against him.

As indicated above, the jury convicted the Defendant of the lesser-included offense of attempted rape of a child in the first count and the lesser-included offense of attempted incest in count six, and he was acquitted on the remaining charges. The Defendant appealed.

## ANALYSIS

On appeal, the Defendant argues that the evidence is insufficient to sustain his convictions and that the trial court erred in failing to provide a modified unanimity jury instruction where the State did not make an election of offenses.

### I. Sufficiency

The Defendant first argues that the evidence is insufficient to support his convictions. When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). It is not the role of this court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Relevant here, rape of a child is defined as the unlawful sexual penetration of a victim by the defendant where the victim is more than three years old but less than thirteen years of age. Tenn. Code Ann. § 39-13-522. "'Sexual Penetration' means sexual intercourse, . . . or any other intrusion, however, slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of

semen is not required[.]" Id. § 39-13-501(7). A person commits incest who engages in sexual penetration with a person, knowing the person to be his or her natural child. Id. § 39-15-302(a)(1).

The Defendant argues that the evidence is insufficient because he was convicted solely upon the victim's testimony, who "was known to be dishonest," and that the victim had simply retaliated against him for disciplining her and taking away her electronic devices.

With regard to the encounter of which the Defendant was convicted, the victim testified that on a Wednesday between Thanksgiving and her thirteenth birthday on December 7, 2016, when she and the Defendant were living in a trailer across from Lance's, the Defendant woke her up between 5:00 and 6:30 a.m. to get ready for school. She recalled that the Defendant began hugging and kissing her before removing her shorts and underwear. She tried to move away, but the Defendant continued. He touched her private areas, both outside and inside her body, before he inserted his penis into her vagina. She said that the intercourse was painful, and her private areas hurt for a couple hours afterwards. By its verdict, the jury accredited the victim's testimony, and we reiterate that the weight and credibility of a witness's testimony is a question for the jury.

As to the Defendant's claim of a lack of evidence against him aside from the victim's testimony, "it has long been the rule in our state that the uncorroborated testimony of a minor victim may be sufficient to sustain a conviction for forcible or coercive sex offenses such as simple rape." State v. Collier, 411 S.W.3d 886, 899 (Tenn. 2013). However, in addition, the Defendant's mother observed what she perceived as inappropriate physical contact between the Defendant and the victim, and the Defendant sent numerous texts to the victim that could be construed as sexually suggestive in nature that support the victim's testimony. We conclude that in the light most favorable to the State, the evidence is sufficient to sustain the Defendant's convictions.

## II. Jury Instruction

The Defendant argues that the trial court erred in failing to provide a modified unanimity jury instruction as set out in State v. Qualls, 482 S.W.3d 1, 17 (Tenn. 2016), where the State did not make an election of offenses. He asserts that the because the victim testified that "there were multiple occurrences each month (between 10 to 20)[,] . . . [he] was entitled to protections to ensure a unanimous verdict on all counts." The State responds that the Defendant has waived review of this claim because he did not request a special jury instruction and has not requested plain error review.

After the trial court ruled on the Defendant's motion for judgment of acquittal, the State addressed the court as follows:

> [State]: Judge, I believe – and I'm sorry. I've only done one other case where I've had to do this. I believe I also have to elect offenses. She did testify a little bit broader, and I didn't I think – from my memory, I'm supposed to do that now. I'm sorry.
>
> . . . .
>
> [Court]: Okay. I guess I'm missing – because I thought she testified about the dates and the corresponding acts.
>
> [State]: Okay. If that satisfies the Court, then yes.
>
> [Court]: The Court's satisfied that it's met the burden of proof to go to the jury now. What the jury does is up to them.

We need not digress into an analysis of whether the Defendant waived this claim because the record indicates that an unanimity issue does not exist as to the counts on which the Defendant was convicted. The victim gave detailed testimony regarding the first time that the Defendant raped her, which was on a Wednesday after Thanksgiving but before her thirteenth birthday on December 7, 2016. This window of approximately one and a half weeks is the only period in which the victim was less than thirteen years old for the rape to qualify as child rape, unlike the remaining charges of rape that applied for the period after the victim was thirteen. The rape of a child charge and its corresponding count of incest did not involve "generic evidence of multiple incidents over a period of time" as alleged by the Defendant. The Defendant is not entitled to relief on this issue. Moreover, even if the trial court should have given a modified unanimity instruction, we conclude the lack of such an instruction did not contribute to the verdict and is harmless beyond a reasonable doubt. See Qualls, 482 S.W.3d at 18.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE