# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2003

## STATE OF TENNESSEE v. MARY LEE DILLIHUNT

### Direct Appeal from the Circuit Court for Hardin County
### No. 8076      C. Creed McGinley, Judge

---

### No. W2002-00843-CCA-R3-CD  - Filed May 16, 2003

---

The defendant was convicted of delivery of less than .5 grams of cocaine, a Class C felony, and sentenced to eight years as a Range II, multiple offender, to be served consecutively to a sentence for a prior conviction.  In a timely appeal to this court, she raises the sole issue of whether the evidence was sufficient to support her conviction.  Following our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Stephanie L. Prentis, Savannah, Tennessee, for the appellant, Mary Lee Dillihunt.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; G. Robert Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The defendant, Mary Lee Dillihunt, was charged in a two-count indictment with the sale and delivery of less than .5 grams of a Schedule II controlled substance (cocaine), with both counts arising out of a November 8, 2000, transaction in Savannah with a confidential informant who was working undercover for law enforcement officials.  The State's first witness at the defendant's trial was Savannah Police Officer Tim Cunningham, who testified that he was an investigator assigned to the Twenty-Fourth Judicial District Drug Task Force.  Officer Cunningham said that the confidential informant involved in the case, Jo Ellen Kee, had prior arrests and had agreed to work with the task force in order to help her own case.  Officer Cunningham arranged for Kee to be

established in an apartment in Savannah and showed her the areas in which the task force wanted her to concentrate, with instructions that she "get out and meet with folks," informing him when someone became comfortable enough to sell her drugs so that he could arrange a time and place for the transaction to occur. To record the transaction, Kee was provided with an automobile that had hidden cameras installed in each side door, recorders placed in the locked trunk, and a transmitter permanently attached under the dash. The transmitter in Kee's vehicle sent a signal through a repeater into the separate vehicle Officer Cunningham used so that he could monitor the conversations in Kee's vehicle.

Officer Cunningham testified that Kee telephoned him on the evening of November 7, 2000, to inform him that she had met with the defendant. He met Kee the following afternoon at their designated location under the river bridge, thoroughly searched both her person and her vehicle to insure she had no drugs, set up the audio and video equipment in her car, and gave her $70 in cash. Kee then drove through town to the home of Richard Taylor, where Officer Cunningham briefly lost contact with her when she exited the vehicle. Shortly thereafter, Kee returned to her vehicle and told Cunningham that Taylor was on his way out to her car. Officer Cunningham explained that Kee was not in his sight at the time and kept him informed of her actions, via the transmitter, by talking aloud inside the vehicle. Next, Taylor got into Kee's vehicle and directed Kee to the defendant's home. Officer Cunningham testified that he was parked at a location between Taylor's home and the defendant's, and saw Kee and Taylor drive past him on their way to the defendant's home, with Kee in the driver's seat and Taylor in the front passenger seat. Remaining at the same location, he heard the defendant and Taylor engaging in conversation and Kee, Taylor, and the defendant as they departed in Kee's vehicle from the defendant's home. Next, he saw Kee drive past him with Taylor still in the front passenger seat and the defendant in the backseat behind Kee.

Officer Cunningham testified he lost sight of Kee's vehicle after following her into the New Town area, but was able to continue monitoring the sounds inside the vehicle. His next contact with Kee occurred after she had dropped off the defendant and Taylor upon the completion of the transaction, when she informed him via the transmitter that she would meet him back at the bridge. There, she handed him the crack cocaine she had purchased, "scoop[ing] it" from her hand into a small bag he held open, which he then sealed into a larger evidence bag and subsequently sent to the Tennessee Bureau of Investigation ("TBI") laboratory in Jackson for identification. Officer Cunningham identified the videotape of the transaction, which was played before the jury and admitted as an exhibit in the case.[1]

Jo Ellen Kee testified she was working as a confidential informant for the drug task force in November 2000. She said she was riding through town in a car with a man named "Snuffy" on the evening of November 7 when the defendant approached to show Snuffy the "little crumb" of crack cocaine she had bought with the $7 he had given her. When Kee asked if the defendant could "hook [her] up," the defendant told her she could if Kee gave her something for doing so and told Kee to come by her house the next day.

---

[1]The defendant did not include the videotape in the record before this court.

Kee testified she met Officer Cunningham at their designated meeting place the next day, where he "wired [her] up," searched her, and gave her $70. After first picking up Richard Taylor at his home, she drove to the defendant's house,[2] blew her horn, and asked the defendant when she came outside if she could still hook her up. The defendant responded by asking if she had been to Michael Taylor's house, and she told the defendant she had, but he was not at home. At that point, the defendant got into the backseat of Kee's car, and Kee told her that she wanted "a fifty." Kee then drove, at the defendant's direction, to Harlem Street, where the defendant had her stop and back into the driveway of an empty lot when she "spotted the guys that they [the defendant and Taylor] going [sic] to get the dope from." Kee testified she gave the defendant $70 and the defendant got out of the car, leaving her and Taylor behind. When the defendant returned, she had some "dope" in each hand. Kee described what the defendant did upon her return to the car:

> Well, she stood at the door first before she got in the car. She handed me the dope. She had my dope in her right hand. She had hers in her left hand. She was showing me what I had got and what she had got, and she handed it to me through the window and got in.

Kee testified the defendant wanted to smoke her cocaine in the car, but she would not let her. Instead, she drove the defendant and Taylor to Taylor's residence, promising to return in thirty minutes to pick up the defendant, before driving to meet Officer Cunningham to turn over the cocaine the defendant had given her. Kee testified on cross-examination that she had agreed to work for the drug task force with the expectation of having her probation, which she had violated, reinstated for another year. She acknowledged she had first approached the defendant about purchasing drugs and that the defendant had not initiated the transaction. She denied she had ever used drugs with the defendant.

TBI Special Agent Forensic Scientist Brian Eaton testified that he analyzed the substance submitted by Officer Cunningham and determined it to be .1 grams of cocaine, in the form commonly known as crack cocaine.

The defendant testified that she was addicted to crack cocaine and realized she needed help to overcome her addiction. She said she had stopped using the drug at one point, but started using again after her son was murdered and she "went in a depression." She never approached Kee about obtaining drugs for her, and agreed to go with Kee to buy the drugs only because she was an addict and helping Kee was the only way she had of getting cocaine for herself. On cross-examination, the defendant acknowledged she had taken $70 from Kee to buy crack cocaine and had returned to Kee's car and poured Kee's "fifty" of crack cocaine into her hand.

---

[2]Kee explained that, although Officer Cunningham had already shown her where the defendant lived, she had Taylor direct her to the defendant's home in order to maintain her cover, as the defendant had not given Kee her address.

After deliberating, the jury found the defendant guilty on the delivery count of the indictment, and set a $2000 fine. Following the denial of her motion for a new trial, the defendant filed a timely appeal to this court, raising the sole issue of whether the evidence was sufficient to support her conviction.

## ANALYSIS

### Sufficiency of the Evidence

The defendant contends the evidence was insufficient for a rational trier of fact to find her guilty of the delivery of cocaine beyond a reasonable doubt. She points out that she was approached by the confidential informant, and argues that her walking from the informant's vehicle to the drug dealer's door and back "should not be enough to constitute delivery of a controlled substance." The State contends that the evidence showed that the defendant knowingly delivered crack cocaine to the confidential informant and, thus, was clearly sufficient to support the jury's verdict. We agree with the State.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To establish the defendant's guilt of the offense, the State had to prove that she knowingly delivered less than .5 grams of cocaine. See Tenn. Code Ann. § 39-17-417(a)(2), (c)(2) (Supp. 2002). "Deliver" or "delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Id. § 39-17-402(6).

The evidence in this case overwhelmingly supports the jury's verdict. Kee testified that the defendant directed her to a location on Harlem Street, took $70 from Kee, exited the vehicle, and returned with the "dope," some of which she poured into Kee's hand. Brian Eaton, the TBI agent

who analyzed the substance Kee received from the defendant, identified it as .1 grams of cocaine. The transaction was not only recorded on videotape, but the defendant herself corroborated the essential details, acknowledging that she delivered cocaine to Kee in her vehicle after having received $70 from her with which to purchase the drug. The fact that Kee initiated the transaction or that the defendant responded because she was a drug addict is irrelevant; police officers clearly did not lure the defendant into committing a crime for which she was not otherwise predisposed, and the defendant did not raise the statutory defense of entrapment at trial. See Tenn. Code Ann. § 39-11-505; see also State v. Stephen Neil Kennedy, No. 02C01-9706-CC-00203, 1998 WL 161072, at *4 (Tenn. Crim. App. Apr. 8, 1998) ("The use of paid informants to combat drug trafficking and to infiltrate criminal enterprises is recognized as necessary and permissible.") (citing Hampton v. United States, 425 U.S. 484, 495, 96 S. Ct. 1646, 1652, 48 L. Ed. 2d 113 (1976) (Powell, J. concurring)). We conclude, therefore, that the evidence was sufficient for the jury to find the defendant guilty of the delivery of less than .5 grams of cocaine beyond a reasonable doubt.

## CONCLUSION

Based on our review of the record, we conclude that the evidence was sufficient to sustain the defendant's conviction for delivery of less than .5 grams of cocaine, a Class C felony. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE