IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 2, 2004

## STATE OF TENNESSEE v. KELSEY DARWIN TREECE

**Direct Appeal from the Circuit Court for McNairy County**
**No. 1670     Jon Kerry Blackwood, Presiding Judge**

_____

**No. W2004-01131-CCA-R3-CD  - Filed February 15, 2005**

_____

Following a jury trial, the defendant, Kelsey Darwin Treece, was convicted of one count of delivery of a Schedule II controlled substance (hydromorphone) and was sentenced to serve fifty months as a Range I offender in the Department of Correction.  On appeal, the defendant argues that the evidence is insufficient to support his conviction.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH, and ROBERT W. WEDEMEYER, JJ., joined.

Gary F. Antrican, District Public Defender, Somerville, Tennessee, for the appellant, Kelsey Darwin Treece.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; and Elizabeth T. Rice, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The defendant sold one pill of Dilaudid containing hydromorphone to Mary Rory on March 6, 2003, in McNairy County.  Unknown to the defendant at the time, Rory was working as an undercover informant for the West Tennessee Judicial Drug Task Force.  The defendant was indicted by the McNairy County Grand Jury on June 9, 2003.  At his jury trial on February 13, 2004, the defendant was convicted of delivering a Schedule II controlled substance, hydromorophone.

At trial, Mary Rory testified that she was a drug addict.  Specifically, she was addicted to opiate narcotics such as Dilaudid.  Rory acknowledged that she had been convicted multiple times of writing worthless checks, shoplifting, and theft under $500 in order to get money to buy drugs.

Consequently, she began working for the Drug Task Force as a paid informant in an effort to "get [her]self clean" and "help clean up the streets."

Rory testified that she was able to purchase drugs for the Drug Task Force because of her reputation as a drug addict. She had been employed by the Drug Task Force for about nine months and was paid each workday whether or not she was successful. On March 6, 2003, Rory approached the defendant, a friend of many years, told him that she was feeling bad and asked him to sell her a Dilaudid. After the defendant agreed to the sale, Rory told him that she would come up with the money and meet him later that afternoon at his residence. Rory then met with the Drug Task Force who equipped her with a body wire, inserted a camera into the vehicle she was driving, and gave her forty dollars to purchase one Dilaudid tablet. Later that afternoon, Rory purchased one Dilaudid tablet from the defendant for forty dollars. After the transaction, Rory brought the Dilaudid tablet back to the Drug Task Force. During her testimony, Rory identified the defendant as the seller and identified the Dilaudid tablet introduced at trial as the tablet purchased. She also testified that she had recently viewed the videotape of the drug transaction and it was an accurate representation of what happened.[1]

On cross-examination, Rory admitted that she was addicted to drugs on March 6, 2003, and would have done anything to support her addiction including lying and stealing. In fact, one reason she worked for the Drug Task Force was to make money to support her addiction. Rory also admitted that she was afraid of losing the work if she did not make a buy within several days. According to Rory, the defendant, a friend and co-worker, knew of her addiction. She asked to buy Dilaudid from the defendant because no one else would sell to her. Rory further stated that before making the buy, her vehicle was searched but not her person, and that the officers working with her knew she did not have a driver's license when she drove the vehicle to the house. Also, Rory acknowledged that the conversation picked up by the video camera did not relate to any drug deal but only consisted of general conversation with the defendant. Finally, Rory admitted to stealing from the defendant's residence after the defendant had been arrested.

Special Agent Rodney Weaver of the West Tennessee Judicial Drug Task Force testified that he employed Rory to purchase drugs from the defendant after receiving several complaints about the defendant and observing suspicious activity outside of his residence. Before the buy was made, Weaver provided Rory with a video recorder and audio transmitting device. Rory was then kept under surveillance as she drove to the defendant's residence. During the buy, Weaver heard Rory make contact with the defendant and heard Rory say "I need one." The conversation then became small talk and Weaver heard Rory drive away from the area. Rory met with Weaver and turned the tablet of Dilaudid over to him. Weaver placed the whole tablet in a marked bag, sealed it, and placed it in the evidence locker at the Drug Task Force Office. He later had the Dilaudid sent to the Tennessee Bureau of Investigation (TBI) Crime Lab in Memphis for testing where it was returned and placed back inside the evidence vault at the office. Weaver identified the tablet introduced at trial as the same tablet he received from Rory and the same tablet picked up from the crime lab,

---

[1] The videotape is not included in the record on appeal.

whereupon the tablet was admitted into evidence along with the crime lab report. Weaver also identified the videotape of the drug transaction, which was played before the jury and admitted as an exhibit in the case.

On cross-examination, Weaver admitted that he did not personally observe the drug transaction, but had viewed the videotape. He also failed to search Rory prior to the drug transaction because no female agents or officers were available to conduct the search. In addition, Weaver knew that Rory did not have a driver's license but allowed her to drive to the defendant's residence anyway.

Officer Ken Holley testified as to the chain of custody of the Dilaudid tablet. He stated that he took the Dilaudid tablet as evidence from the locker of the Selmer Police Department and carried it to the TBI Crime Lab in Memphis for testing. Before handing the bag over to the crime lab, he signed his initials and wrote the date on the evidence bag. He identified the plastic bag as the evidence bag he had carried to Memphis, noting the bag still contained the Dilaudid tablet sent for testing.

Special Agent Forensic Scientist Dana Rose, a TBI employee specializing in controlled substance identification and recognized by the court as an expert, testified that she conducted an analysis of the tablet delivered to her by Officer Holley. Rose stated that she broke off a piece of the tablet in order to test the tablet. After analysis, it was determined that the tablet contained hydromorphone, a Schedule II controlled substance. Rose testified that the tablet containing hydromorphone was commonly known by its brand name, Dilaudid.

David Forsythe, a licensed pharmacist, testified that the drug Dilaudid contained hydromorphone, a Schedule II controlled substance. Forsythe identified hydromorphone as a narcotic analgesic often used to treat severe pain. In addition, Forsythe stated that hydromorphone was chemically related to morphine. Because of the drug's addictive nature, a written prescription from a licensed physician was required before one could obtain it and refills were prohibited by federal law.

The defendant testified that he did not sell or deliver a Diluadid tablet to Rory on March 6, 2003, but rather took Rory's thirty dollars because it was owed to his brother, Hoyt. According to the defendant, Rory had been a friend for many years and worked with him. The morning of March, 6, 2003, he and Rory were working together when Rory asked him for a Dilaudid. The defendant refused and continued to refuse Rory's requests for Dilaudid. Later, Rory came back to the house in a truck and gave him thirty dollars to pay back money owed to his brother, Hoyt. Rory owed Hoyt twenty-five dollars. Therefore, when Rory gave him thirty dollars, he took the money in the house to Hoyt's bedroom and laid it on the dresser. He then went back outside to talk to Rory. While outside talking, Hoyt called him back inside and told him to give Rory her change. The defendant went back outside and gave Rory five dollars. Consequently, the videotape showed Rory's receipt of her change of five dollars, and not the defendant's delivery of a Dilaudid tablet. The defendant

finally said that Rory had not been truthful when testifying except when she testified that "she'd lie to do anything."

## ANALYSIS

The defendant argues that the evidence is insufficient to support his conviction for the delivery of a Schedule II controlled substance.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To establish the defendant's guilt of the offense, the State had to prove that he knowingly delivered a Schedule II controlled substance. See Tenn. Code Ann. § 39-17-417(a)(2), (c)(2)(A) (2003). "Deliver" or "delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Id. § 39-17-402(6).

In challenging the sufficiency of the evidence, the defendant points to conflicts in the evidence. Primarily, the defendant argues that Mary Rory's testimony regarding his participation in a drug delivery was not believable when compared to his own testimony. Rory was an admitted drug addict who said she would lie or steal to get her drugs. She even testified that she was working as a drug buyer in order to make money to buy Dilaudid. In contrast, the defendant contends that his testimony regarding his actions of taking money from Rory in satisfaction of a debt owed, and then returning with Rory's change, is entirely believable. The defendant also argues that the trial court charged the jury with the lesser offense of casual exchange. See id. § 39-17-418. Accordingly, the defendant argues the evidence submitted by the State was insufficient for a jury to have found the essential elements of delivery of a controlled substance beyond a reasonable doubt.

As previously stated, the jury determines witness credibility and resolves conflicts in evidence not this court. We do not re-weigh or re-evaluate the evidence. Thus, any conflicts

-4-

between the testimony of Mary Rory and the defendant were resolved by the jury. Here, the jury, by its verdict accredited the testimony of the State's witnesses over the testimony of the defendant. Because the evidence was sufficient for a rational jury to find the defendant guilty beyond a reasonable doubt, we affirm the judgment.

## CONCLUSION

In conclusion, the judgment of the trial court is affirmed.

_____
J.C. MCLIN, JUDGE