IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 22, 2007

## STATE OF TENNESSEE v. JACK N. TAYLOR

**Direct Appeal from the Criminal Court for Loudon County**
**No. 10691      E. Eugene Eblen, Judge**

---

**No. E2006-02719-CCA-R3-CD - Filed August 29, 2007**

---

The defendant, Jack N. Taylor, was convicted of robbery, a Class C felony, and sentenced to three years in the community corrections program. On appeal, he argues that the evidence was insufficient to support his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Joe H. Walker, District Public Defender, and Walter B. Johnson, II, Assistant Public Defender, for the appellant, Jack N. Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Scott McCluen, District Attorney General; and John Bledsoe, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

At the defendant's May 31, 2005, trial, the victim, Agnes Hartline, testified that she was a seventy-one-year-old widow and lived alone in Lenoir City. On November 7, 2002, she went to the bank to cash a check, bought some groceries, and then went to Burger King. She returned home at about 5:45 p.m., parked in her carport, and noticed a medium gray car with a red stripe "going slow" past her driveway. She saw two people in the front seat of the gray car. As she was unloading her purchases, a "[p]retty good size" man approached her from the side of her house. He asked her twice if "Christy" lived there, and she told him that no one by that name had ever lived there. The man then said, "[W]ell[,] I'll just have to have that purse" and grabbed Ms. Hartline's purse. Even though she knew she "was fighting a losing battle," she held onto her purse as the man "jerk[ed] and pull[ed]

it." He succeeded in taking the purse from her after scratching and bruising her arms until they bled and then ran across her yard and got into the gray car she had seen pass her house. Ms. Hartline said her purse contained over $100 in cash, credit cards, her driver's license, and other items.

Ms. Hartline said that she went inside her house and called 9-1-1. The police arrived and subsequently took her to look at a gray car that had been stopped nearby. She identified the car as the one in which the robber had fled. After the police took her home, they brought three suspects to her house, and she identified the defendant as her robber. She also identified the defendant from a photographic lineup of six persons she viewed in her home a week after the robbery. At trial, she once again identified the defendant as the man who took her purse. On cross-examination, she confirmed that even though the police found the gray car "about a mile or so" from her house and searched the defendant and the car, her purse was not recovered.

Officer Joe Foster of the Lenoir City Police Department testified that "four or five" minutes after receiving the dispatch regarding the robbery, he stopped the vehicle in which the defendant was riding because it matched the description given in the dispatch. He held the defendant and the other two occupants for investigative purposes until county officers arrived. He said that the location where he stopped the vehicle was about two miles from the victim's subdivision.

Sergeant Billy Hall of the Loudon County Sheriff's Department testified regarding the victim's identification of the defendant during the "show up" at her house shortly after the robbery. He explained that a "show up" is conducted when a witness might be able to identify a suspect shortly after a crime. In this case, the "show up" took place approximately twenty-nine minutes after the robbery. The police brought the three men who had been stopped in the gray car to the victim's house, and she identified the defendant immediately. Sergeant Hall also conducted the photographic lineup and said he intentionally waited seven days before taking the photographs to the victim's house "to give the benefit of the doubt to everybody involved." However, as soon as he uncovered the photographic lineup of six persons, the victim identified the photograph of the defendant and "was very adamant that that was him."

On cross-examination, Sergeant Hall said that personnel from Loudon County Fire and Rescue, the Lenoir City Fire Department, and other county and city policemen had searched the area between the victim's house and the location where the defendant was apprehended, a distance of "about a mile," but her purse was not found. Additionally, no evidence was discovered on the defendant or in the car.

Defense witness Michael Silvey testified that the defendant and two other friends, "the Sentell brothers," came to his house at about 5:15 p.m. on November 7, 2002, with Nick Sentell driving the gray Chevrolet Corsica they arrived in. The defendant told Silvey that his son had been born that day, and Silvey gave the men beer to celebrate. The defendant and the Sentells stayed for about half an hour before leaving, and, as they drove away, Silvey saw the police stop their car. Later, the police interviewed Silvey regarding the robbery and searched the outside of his house, but

no evidence was recovered. According to Silvey, Nick Sentell was in jail at the time of the defendant's trial.

Silvey's wife, Shannon Silvey, testified that at about 5:30 p.m. on the day of the offense, she saw her husband talking with the defendant and Alan and Nick Sentell outside their house. She looked out the window at that time because her husband was mowing the lawn and had stopped mowing. She said that the men were celebrating the birth of the defendant's child and "were out there having a couple of beers," but they did not come inside. She confirmed that the police had later searched the perimeter of their house but did not search the interior even though she granted them permission.

The defendant testified that, on the morning of the robbery, he was at the hospital for the birth of his son. He later left the hospital to pick up and cash his paycheck before meeting Alan Sentell, a co-worker, for lunch. They subsequently met Sentell's brother, Nick Sentell, and then went to the Silveys' house where they "had a few beers" and stayed for "a good 30-45 minutes." They were stopped by the police immediately after leaving the Silveys' house. The defendant said that he was arrested after being taken to the victim's house. However, he denied any involvement in the robbery.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the evidence presented at trial is sufficient to support his conviction. To argue the insufficiency of the evidence, the defendant points out that Michael Silvey testified that he was at his house at the time of the robbery and that the victim's description of the clothes the robber wore did not exactly match what he had on that day. The defendant further contends that his conviction should be set aside because the police never recovered the victim's purse, although they searched intensely for it.

In consideration of this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) (2006); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn.1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). This rule applies when the determination of guilt is based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). Additionally, a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Robbery is defined by statute as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2006). The victim testified that the defendant approached her in her carport, grabbed her purse, and struggled with her to get it out of her hands, bruising her arms in the process. She positively identified him very quickly after the incident and then was able to select him from a photographic lineup a week later. Viewed in a light most favorable to the prosecution, this evidence is sufficient to support the defendant's robbery conviction.

Although the defendant and Mr. and Mrs. Silvey testified that he was at the Silvey residence at the time of the robbery, the jury did not credit their testimony but, rather, that of the victim. We conclude that, based upon the victim's identification of the defendant as her assailant, a reasonable jury could conclude that he committed the robbery.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE