# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 3, 2016

## STATE OF TENNESSEE v. LORENZO BROWN

### Appeal from the Criminal Court for Shelby County
### No. 13-03232    Glenn Wright, Judge

---

### No. W2015-01916-CCA-R3-CD  -  Filed July 15, 2016

---

The defendant, Lorenzo Brown, was convicted by a Shelby County Criminal Court jury of attempted voluntary manslaughter, possession of a firearm during the attempted commission of a dangerous felony, and aggravated assault. The trial court sentenced him to four years for the attempted voluntary manslaughter conviction, three years for the firearm conviction, and five years for the aggravated assault conviction, with the four- and three-year sentences to be served consecutively and the five-year sentence concurrently, for an effective sentence of seven years, in the county workhouse. On appeal, he argues that the evidence is insufficient to support his attempted voluntary manslaughter and firearm convictions. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Seth M. Seagraves, Memphis, Tennessee (on appeal); Larry D. Sims, II and Danielle Mitchell-Sims, Memphis, Tennessee (at trial), for the appellant, Lorenzo Brown.

Herbert H. Slatery III, Attorney General and Reporter; Robert H. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carla L. Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted for attempted second degree murder, employing a firearm during the commission of a dangerous felony, and aggravated assault, arising out of his shooting the victim, Charlie Haymon, on January 23, 2013, in Memphis.

## State's Proof

The victim testified that someone broke into his home in early January 2013 and took his laptop, PlayStation, and PlayStation games. He filed a police report and began "[a]sking around" his neighborhood as to the whereabouts of his laptop, which contained all of the music he used in his work as a deejay. The victim learned that the defendant, whom he knew "[b]y face" from his neighborhood, might be responsible for the crimes. The victim then asked his brother's brother, Carlos, who lived down the street from the victim and repaired laptops, if anyone had tried to sell him a laptop. Carlos reported that the defendant had tried to sell him one that fit the description of the victim's laptop.

The victim said that, on January 23, 2013, as he was driving to a convenience store, he saw the defendant on Frank Street. The victim stopped his car, got out, and asked the defendant if he had tried to sell a laptop to Carlos. The defendant denied doing so and became upset when the victim offered to buy back his laptop. The victim then asked the defendant if he was "going to turn a crumb into a brick," meaning that the victim wanted his laptop back without getting the police involved. The defendant asked the victim, "[W]hat the f*** you mean by that?" The victim, who was unarmed, raised his hands, and the defendant shot him three times, with the bullets striking the victim's abdomen, lungs, and groin. The victim said he was hospitalized for seven or eight days, underwent surgery, and had to have a colostomy bag for over four months.

Detective Maranda Jones of the Memphis Police Department testified that when she arrived on the scene of the shooting, she found the victim lying on the concrete with three gunshot wounds. The victim told her that "Mane Mane"[1] had shot him.

Russell Kesler, a firefighter/paramedic with the Memphis Fire Department, testified that he was called to the scene of the shooting where he found the bleeding victim with two gunshot wounds to the abdomen and one to the groin area. The victim was transported by ambulance to the Trauma Unit at the Regional Medical Center.

---

[1] The victim testified that the defendant's nickname was "Mane Mane."

Officer Steven Ford of the Memphis Police Department Crime Scene Unit testified that he responded to a shooting call on Frank Street on January 23, 2013. He explained that his duties were to photograph and process the crime scene, as well as to collect, analyze, and transport evidence to the property room. Officer Ford identified photographs depicting his scene placards pointing out shell casings and a blue baseball cap, among other things. He also went to the Regional Medical Center where he collected the victim's clothing and a projectile.

**Defense Proof**

Mary Ann Brown, the defendant's mother, testified that in January 2013 her mother; her daughter, Erica Brown; and the defendant lived with her. She said that in early January, the victim came to her house looking for the defendant whom he referred to as "Mane Mane." The defendant was not home, and the victim told Ms. Brown to tell the defendant to come see him and that it was "going to be a real motherf***ing problem." Ms. Brown said that she later told the defendant that the victim had been looking for him, but the defendant did not say anything in response. She said that she was afraid for the defendant.

Erica Brown, the defendant's sister, testified that before the shooting the victim had been to her mother's house twice, "threatening to do something to [the defendant]." She said she knew the victim "[f]rom the hood" but did not know his name at the time. The victim told her that he was looking for a gun. Ms. Brown said she was scared for her life, her brother, and everyone else that was in the house.

The defendant testified that the victim came to his house a few days prior to the shooting, asking if he had broken into the victim's house and telling him he wanted his gun back. The defendant denied breaking into the victim's house or having his gun. The defendant said that, on January 23, 2013, he was armed with a handgun and standing outside his friend's house on Frank Street when the victim pulled up, got out of his car, put something in his pocket, and walked toward the defendant and his friends. The victim told the defendant, "I just want my gun back. You can keep the rest of it." The defendant told the victim he did not have his gun and resumed talking to his friends. The victim then hit the defendant in the back of the head, knocking off the defendant's blue cap. When the defendant turned around, the victim charged toward him. The defendant admitted that the victim did not pull out a weapon or say anything to him. The defendant further admitted that his hand was on his gun when the victim approached him and that he "just shot. I was scared. [The victim was] charging toward me, so I'm just going to shoot." The defendant said he fired three shots and then ran. The defendant claimed he shot the victim in self-defense.

3

## ANALYSIS

### Sufficiency of the Evidence

At the outset, we note that, in his appellate brief, the defendant argues that the evidence was insufficient to sustain his convictions for attempted second degree murder and possession of a firearm during the attempted commission of a dangerous felony. However, since the defendant was indicted for attempted second degree murder but convicted of the lesser offense of attempted voluntary manslaughter, we will consider the sufficiency of the evidence for the latter offense. The defendant argues that the "testimony at trial established that [the defendant's] actions were unintentional and reactionary based on reasonable fear" and that "the State offered no proof that the [defendant] intended to go armed during a dangerous felony, because [the defendant] was already armed when [the victim] assaulted him."

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so

4

that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense":

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

Tennessee Code Annotated section 39-17-1324(a) provides that "[i]t is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." A dangerous felony includes attempted voluntary manslaughter. Tenn. Code Ann. § 39-17-1324(i)(1)(C), (M).

In the light most favorable to the State, the evidence showed that the unarmed victim approached the defendant regarding the recent break-in and theft at the victim's home. The victim asked the defendant if he was "going to turn a crumb into a brick," meaning that the victim wanted his laptop back without getting the police involved. The defendant asked the victim, "[W]hat the f*** you mean by that?" The victim then raised his hands, and the defendant shot him three times and fled the scene. As a result of his injuries, the victim was hospitalized for seven or eight days, underwent surgery, and had to have a colostomy bag for over four months. The jury accepted this evidence and disregarded the defendant's attempt to characterize the shooting as self-defense. This evidence was sufficient for the jury to find that the defendant attempted to kill the victim while in "a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a).

5

The defendant also argues that, by his own admission, he was already armed and, therefore, could not intend to go armed. Intent may be inferred from both direct and circumstantial evidence. State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). The necessary intent to sustain a conviction for possessing a weapon with the intent to go armed may be proven by the circumstances surrounding the possession of the weapon. Cole v. State, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). We conclude that the evidence was sufficient for the jury to find that the defendant intended to go armed when he used his gun to shoot the victim three times.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial are affirmed.

_____
ALAN E. GLENN, JUDGE