# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## April 6, 2004 Session

## STATE OF TENNESSEE v. ROXANNE R. VANCE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-T-475     J. Randall Wyatt, Jr., Judge**

---

**No. M2003-01748-CCA-R3-CD - Filed May 10, 2004**

---

Following a bench trial, the defendant, Roxanne R. Vance, was convicted of DUI per se, a Class A misdemeanor, and was sentenced to eleven months, twenty-nine days, all suspended except seven days with the balance to be served on probation. In addition, her driver's license was suspended for one year and she was ordered to pay a fine of $350 and attend alcohol and drug safety school. On appeal, she argues that the trial court erred in finding that her breath alcohol test results created an irrebuttable presumption of DUI per se and that the evidence was insufficient to support her conviction. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

James C. Vance, Nashville, Tennessee, for the appellant, Roxanne R. Vance.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jim Todd and Katie Hagan, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Officer Jeb Johnston of the Nashville Metro Police Department testified that on July 12, 2002, he clocked the defendant traveling forty-four miles per hour in a thirty-mile-per-hour speed zone in downtown Nashville. When he stopped the defendant at Twelfth and Broadway Streets, he "noticed she fumbled getting her insurance card, and also she had an extreme odor of alcoholic beverage about her person." In addition, the defendant had bloodshot eyes, was unsteady on her feet as she exited her vehicle, and told him that she had consumed two beers between 8:00 p.m. and 10:00 p.m. Johnston administered three field sobriety tasks to the defendant. As to the horizontal

gaze nystagmus task, Johnston said the defendant had vertical nystagmus, "meaning involuntary jerks of the eye, which told [him] that she had probably had too much to drink that particular day." Regarding the walk-and-turn task, Johnston said the defendant "indicated an impairment . . . she couldn't keep her balance and she started too soon . . . . Also, she missed heel to toe at least once going down and at least once going back. And she did not pivot, as prescribed. However, she took the correct number of steps, she didn't raise her arms, she didn't step off the line, and she didn't stop walking." On the one-legged stand task, the defendant "raised her arms during the first ten seconds, and also she swayed sometime between the middle of the task, between the eleventh and twenty-second scene."

After the defendant completed the field sobriety tasks, she consented to take a breath alcohol test. Officer Johnston, who had been certified by the Tennessee Bureau of Investigation to operate the Intoxilyzer 1400 machine, reset his machine at 1:25 a.m. and then observed the defendant for approximately twenty-one minutes before administering the test to her at 1:46 a.m. Johnston identified a printout from the Intoxilyzer machine reflecting that the defendant registered .23% on the test. Explaining the Intoxilyzer 1400 machines, Johnston said the machines "do a self check before the breath test. They give the actual breath test, and then they give an internal check after the breath test, which means if it's an invalid test it will not give you a printout. It will give you some type of error code. [The defendant] took a good test." On cross-examination, Officer Johnston acknowledged that his patrol car was equipped with a video camera and that a videotape had been made the morning of the defendant's arrest. A copy of the tape was then admitted into evidence.

The twenty-three-year-old defendant testified that she lived in Hendersonville, Tennessee, and was currently a nursing student at Aquinas College. She admitted that she told Officer Johnston she had consumed two beers the evening before her arrest but said she had consumed them between 7:00 p.m. and 12:00 a.m., not between 8:00 and 10:00 p.m. as Johnston had testified. She said she had been out with friends that evening and was the designated driver of the group. She acknowledged that her friends were "very intoxicated" but denied that she was intoxicated. Asked about her drinking habits, the defendant said that she only drank alcohol on social occasions, "[m]aybe every other month." In response to a question about her registering .23% on the breath test, the defendant replied that she felt it was an "[i]njustice, because I don't know what happened with the machine." The defendant said that she had been legally blind before undergoing laser reconstructive surgery in January 1998, but she did not tell Officer Johnston about her surgery because he did not ask.

Candace Goodwin testified that she had been friends with the defendant for six years and that the defendant was a "very responsible" driver. Goodwin said she had never seen the defendant drunk and that the defendant only drank socially, "one or two drinks, you know, every once in a while." According to Goodwin, when the defendant did drink socially, she always had someone else drive.

Bill Taylor, a former Gainesville, Georgia, police officer who was qualified as an expert in the area of field sobriety evaluation, testified that he had been certified to teach field sobriety training in Macon, Georgia, and had taught over 2000 police officers. In addition, he had made two training

videos regarding field sobriety evaluation, both of which were still being used in the Georgia Police Academies. Taylor acknowledged that he had not been certified as an expert on the Intoxilyzer machine in Tennessee and that he had never attended a class on the machine that was used for the defendant's test.

At defense counsel's request, Taylor had reviewed the videotape of the defendant's arrest and said there was a difference between what the videotape showed and what Officer Johnston's written report showed. As the videotape was played, Taylor narrated the defendant's actions and said, in his opinion, she did not stagger when she exited her vehicle. The horizontal gaze nystagmus task had been conducted out of the view of the camera and, therefore, was not included on the videotape. According to Taylor, before a nystagmus task is administered, screening questions must be asked because there are things other than alcohol, such as head injuries, that can cause nystagmus. Asked if the defendant's eye surgery could have affected her performance on the nystagmus task, Taylor replied, "It's possible. . . . I have never seen any written authority for that, but I don't know." Taylor added that "about five percent of the population has some type of natural nystagmus." He said that he had tested the defendant and found that she had some nystagmus in her right eye at maximum deviation. As for the defendant's walk-and-turn task which was included on the videotape, Taylor acknowledged that Officer Johnston told the defendant to pivot but said "with her taking those kind of steps, in my opinion, it would be very difficult to stop and pivot around. She turned around and went back down." Taylor also said that he thought the defendant had shown "pretty good balance" and that, in his opinion, she had passed the walk-and-turn task. It was also Taylor's opinion that the defendant had passed the one-legged stand task, contrary to Officer Johnston's testimony. As to the defendant's speech on the videotape, Taylor said, "I didn't hear anything that she slurred." Taylor said that the manner in which the defendant performed the field sobriety tasks was inconsistent with her registering .23% on the breath test. According to Taylor, the defendant, who weighed 150 pounds, would have had to have eleven drinks in her system at the time of the test to register .23%.

On cross-examination, Taylor acknowledged that the defendant started the walk-and-turn task before the officer instructed her to do so and that she began the task by putting her left foot in front of her right foot, instead of her right foot in front of her left foot. Taylor further acknowledged that when Officer Johnston stopped the defendant, she initially lied to him and said she had not been drinking.

At the conclusion of the bench trial, the court found the defendant not guilty of Count One, which charged DUI, first offense, but guilty of Count Two, which charged DUI per se.

## ANALYSIS

### I. Breathalyzer Test Results

The defendant argues that the trial court erred in ruling that the results of her Intoxilyzer test created an irrebuttable presumption of DUI per se, saying that the court "did not weigh the other

evidence presented that established that the test results did not accurately reflect the defendant's blood alcohol level."

The defendant was convicted of violating Tennessee Code Annotated section 55-10-401(a), which provides:

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
>
> (2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.[1]

In finding the defendant guilty of DUI per se, the trial court stated:

> When you come to the standard for a conviction, which is beyond a reasonable doubt to a moral certainty. I'm not to that, though, on Count Two. And so what I'm trying to say is, is that the Court doesn't believe that it has any choice under the evidence that's been accepted here in this Court without objection, to find anything other than in Count Two, that the State has carried its burden and that the defendant is guilty of DUI per se, because of the test. I'm going to find her not guilty as to Count One. I don't find beyond a reasonable doubt, if there had not been a test, that the Court would have found her under the influence. But I do think she's definitely guilty under the evidence that I have. I can't deny. Guilty of Count Two. So that's the judgment of this Court.

We respectfully disagree with the defendant's view of the trial court's ruling, that the court believed the results of the Intoxilyzer test were "irrebuttable," thus requiring the court to find the defendant guilty of DUI per se. Rather, as we understand the trial court's ruling, the court considered, in addition to the other testimony, the fact that the defendant had registered a .23% on the Intoxilyzer test and that Officer Johnston testified, *inter alia*, that she had bloodshot eyes and was

---

[1] Effective July 1, 2003, subsection (2) was amended to: "The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more."

unsteady on her feet as she exited her vehicle, as well as former police officer Taylor's testimony that, based upon his viewing of the videotape, the defendant did not appear to be intoxicated.

## II. Sufficiency of the Evidence

The defendant also argues that the evidence was insufficient to support her conviction for DUI per se, saying that the "videotape evidence and the testimony of Mr. Taylor clearly preponderate against the reading of the machine."

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewed in the light most favorable to the State, there was sufficient evidence for the trial court to convict the defendant of DUI per se. Officer Johnston testified that the defendant had bloodshot eyes, was unsteady on her feet, and "had an extreme odor of alcoholic beverage about her person." The trial court, relying upon the results of the Intoxilyzer test and the testimony of Officer Johnston, concluded that the State had established the defendant's guilt as to DUI per se. We conclude that the record supports this determination.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE