IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 15, 2018

**STATE OF TENNESSEE v. JACOB ERWIN BRANCH**

**Appeal from the Circuit Court for Marshall County**
**No. 15CR136        Franklin L. Russell, Judge**

_____

**No. M2017-01448-CCA-R3-CD**

_____

The Defendant, Jacob Erwin Branch, was convicted by a Marshall County jury of two counts of rape of a child, a Class A felony, and contributing to the delinquency of a minor, a Class A misdemeanor, and was sentenced by the trial court to an effective term of twenty-eight years at 100% in the Department of Correction. On appeal, the Defendant challenges the sufficiency of the evidence in support of his child rape convictions. Following our review, we affirm the judgments of the trial court. However, we note the verdict forms indicate the jury found the Defendant not guilty on the charges of rape and aggravated sexual battery, but the judgment forms indicate those charges were dismissed. We therefore remand for entry of corrected judgment forms as to these charges.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Case Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

M. Wesley Hall, IV, Unionville, Tennessee, (on appeal); and Robert Lee Marlow, Shelbyville, Tennessee (at trial), for the appellant, Jacob Erwin Branch.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Weakley E. Barnard, District Attorney General; and William Bottoms, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

According to the State's proof at trial, on the afternoon of Friday, June 5, 2015, the victim's mother dropped the twelve-year-old victim, K.P.,[1] at the home of the eighteen-year-old Defendant with the understanding that the victim was going to accompany the Defendant, the Defendant's sisters and their children, and eighteen-year-old Mathew Colburn to the movies. Instead, the Defendant and Mr. Colburn used the victim's movie money to purchase marijuana, which they smoked with the victim. Although the initial plan was for the victim's mother to return for the victim after the movie was over, Mr. Colburn obtained permission from the victim's mother for the victim to spend the night at the Defendant's home. Sometime during the night, the victim awoke to find the Defendant on top of her penetrating her vagina with his penis and his fingers. The victim reported the rape to her mother early on Monday morning, and in the ensuing investigation, the Defendant gave a statement to police in which he admitted that he smoked marijuana with the victim and penetrated her with his penis and his fingers. The Defendant was subsequently indicted by the Marshall County Grand Jury for one count of child rape based on the digital penetration, one count of child rape based on the penile penetration, two alternate counts of rape based on the digital penetration, two alternate counts of rape based on the penile penetration, one count of aggravated sexual battery, and one count of contributing to the delinquency of a minor.

At the Defendant's August 29-31, 2016 trial, the victim's mother, T.C.,[2] testified that the victim asked her on June 5, 2015, for permission to go to the movies with some friends, including the Defendant. She said she gave the victim her allowance and drove her to the Marshall County home of the Defendant. Upon their arrival, Ms. C. went inside the home to use the restroom and while inside had a brief conversation with one of the Defendant's sisters, who asked her how old the victim was. According to Ms. C, her understanding was that the victim was going to the movies with not only the Defendant and Mr. Colburn, but also the Defendant's sisters and the children of one of his sisters. She said the initial plan was for her to pick the victim up that night after the movie. However, Mr. Colburn later texted her to ask permission for the victim to spend the night, and she agreed after receiving his assurance that the victim would be sleeping in the bedroom of one of the Defendant's sisters.

Ms. C. testified that she picked the victim and Mr. Colburn up the next morning and took them with her to a planned outing to the river. The victim was quiet and

---

[1] In accordance with the practice of this court, we refer to the minor victim by her initials only.

[2] In order to protect the victim's privacy, we refer to the victim's mother by her initials only.

withdrawn during the excursion, and she repeatedly asked her what was wrong. The victim told her only that her stomach was hurting. Early Monday morning, however, the victim divulged what had happened with the Defendant during her sleepover at his home. Ms. C. testified that she was upset and first called the victim's pediatrician for advice before taking the victim to the health department for an examination and then to the Lewisburg Police Department.

On cross-examination, Ms. C. acknowledged that she had made an allegation in the past about the victim's having been abused by her ex-husband. She further acknowledged having learned from a police detective that the victim had divulged a previous incident with another man. She admitted that she had filed a runaway report on the victim approximately a year earlier and that the victim had lied about her identity to the police officer who located her. She testified that she monitored the victim's current Facebook page, which was under the victim's real name, but had been unaware of the victim's prior Facebook page under the name "Princess Unicorn" until the victim's grandmother informed her about it. She stated that the victim used her (Ms. C's) smartphone and Facebook account to communicate with the Defendant and Mr. Colburn on June 5, 2015.

On redirect and re-cross examinations, Ms. C. acknowledged that the victim had been Facebook friends with the Defendant through the "Princess Unicorn" account, which was no longer active.

The thirteen-year-old victim testified that at the time of the incident, she was twelve years old and weighed approximately ninety-two pounds. She had known Mr. Colburn for about a year at that time, having first become acquainted with him when they both lived in the same trailer park. She first met the Defendant in person on June 5, 2015, but had communicated with him via Facebook on one occasion about four or five months earlier. On June 5, 2015, she used her mother's cellphone to Facebook message Mr. Colburn to ask if he wanted to hang out. In the subsequent exchange, both Mr. Colburn and the Defendant messaged her back, asking her if she wanted to go to the movies and if she could bring $30 with her to the Defendant's Lewisburg home.

The victim testified that her mother drove her to the home in Lewisburg and dropped her off. Once there, she and the Defendant sat on the back porch talking, and the Defendant commented that she was pretty. According to the victim, she replied, "Thank you, but I'm 12." At some point, the plan to go to the movies changed because the Defendant no longer had a ride. Mr. Colburn asked if she still wanted to hang out and she agreed. Later, the Defendant asked for her movie money, and she overheard him telling Mr. Colburn that he was going to call someone to get marijuana. A short while later, two men named "Anthony" and "Jenny" arrived at the Defendant's home in a van.

The victim testified that she, the Defendant, and Mr. Colburn left with the two men in the van and went first to a house where "Jenny" got out and briefly went inside. They went next to a store to purchase "Cigarillos" and then to a home in "the projects" where they all got out and went with a Hispanic man to a back bedroom in the home. There, Mr. Colburn rolled the marijuana into a cigarette that they passed around and smoked. The victim testified that she had never before used marijuana and initially refused when the Defendant offered it to her but eventually relented and took her turn as the cigarette was passed around.

The victim estimated that she took at least three puffs of the marijuana cigarette before she suddenly became very tired and extremely intoxicated. She said she was so "out of it" that Mr. Colburn had to help her walk out of the home to the van. On the return trip to the Defendant's house, she and the Defendant were sitting together in the back of the van, and the Defendant kept rubbing her crotch area over her clothing, despite her attempts to move away from him. When they reached the Defendant's home, she went to the bedroom that had earlier been designated for her, lay down fully dressed, and went to sleep.

The victim testified that she later awakened to the feeling of "a very painful push in [her] vagina[,]" and found the Defendant on top of her penetrating her vagina with both his finger and his penis. She said she tried to scream and to push the Defendant off, but he was holding her down. The Defendant, who was moaning, continued moving inside her until Mr. Colburn turned on the light, walked into the room, and yelled at him. Mr. Colburn then handed her her shorts and her panties, which were either on the floor or at the end of the bed, and told her to go to the bathroom.

The victim testified that she went to the bathroom, found that she was bleeding from her vagina, cleaned herself, and put her underwear and shorts back on. During that time, she could hear the Defendant and Mr. Colburn arguing but did not pay attention to what they were saying. At some later point, she and Mr. Colburn left the house together and walked to a bridge, where they texted her mother to come pick them up.

The victim testified that her mother eventually picked them up at about 12:30 p.m. and took them first to the victim's home and then swimming. She said she did not initially tell her mother about the rape because she was afraid her mother would get upset. However, when her mother noticed that she was not feeling well and asked her on Monday morning what was wrong, she told her what had happened. The next day, her mother took her to the Health Department and then to the Lewisburg Police Department.

- 4 -

On cross-examination, the victim testified that everything was "a blur" after she went into the bathroom to get dressed. She could not recall if she went back into the bedroom to sleep or whether Mr. Colburn slept in the bedroom the rest of the night to protect her. She was adamant that the bleeding she experienced that day was from sexual penetration rather than the start of her menstrual cycle. She acknowledged that a few months prior to the incident in the case at bar, she lied about her identity to a police officer who found her after her mother reported her as a runaway. Finally, she denied that she made up the rape story as a cover because Mr. Colburn caught her engaging in a consensual sex act with the Defendant.

Nineteen-year-old Mathew Colburn corroborated the victim's account about their initial plan to go to the movies, the change in plans, the purchase of marijuana, and the group's smoking of marijuana in a bedroom in a home in "the projects." He testified that although he did not have to help the victim walk back to the van for their return trip to the Defendant's house, she was so high that she had a "stagger in her walk." He said that when they got back to the Defendant's home, he, the Defendant, the victim, and "Brittany" smoked another marijuana cigarette in Brittany's small, separate residence on the property before going outside together to the patio area, where the victim announced that she was going to bed.

Mr. Colburn testified that after the victim went inside the main residence to sleep, he and the Defendant stayed outside together for about ten more minutes before the Defendant went inside. After smoking one more marijuana cigarette alone, Mr. Colburn went inside the house, where he saw the Defendant in the bedroom moving on top of the victim. He said the Defendant got up and came out of the room, and he asked him what was going on and what the Defendant was thinking. He stated that the Defendant told him that he had "f***ed" the victim. Later in their conversation, the Defendant also told him that he had "fingered" the victim and claimed that the victim had consented to their sexual encounter.

On cross-examination, Mr. Colburn acknowledged that he did not hear any screams or see any struggle when he walked in the bedroom and saw the Defendant on top of the victim. He said he did not turn the light on because he did not want to see the Defendant's private parts. He stated that the next morning, he and the victim left the Defendant's house at about 9:00 a.m. and began walking down the road together as they waited for the victim's mother to come pick them up. The victim was upset and crying, and they briefly talked about what Mr. Colburn had seen the night before. According to Mr. Colburn, the victim was aware of the sexual intercourse but did not know that the Defendant had penetrated her with his finger until Mr. Colburn told her what the Defendant had admitted to him the previous night.

- 5 -

Officer Shawn Crawford, of the Lewisburg Police Department, testified that on June 12, 2015, the Defendant was apprehended as he attempted to flee from a Lewisburg house where Officer Crawford and his fellow officers had gone to serve him with an outstanding arrest warrant.

Detective Scott Braden of the Lewisburg Police Department testified that after being advised of his rights and signing a written waiver of his rights, the Defendant gave a statement in which he admitted that he had engaged in sexual intercourse with the victim but claimed that the encounter was consensual. Detective Braden identified the Defendant's written statement and the CD of his follow-up interview with the Defendant, which were both admitted as exhibits and published to the jury. He also identified a recorded jail telephone call made by the Defendant, also admitted as an exhibit and published to the jury, in which the Defendant told the individual to whom he was speaking that he knew the victim was 12 years old.

On cross-examination, Detective Braden testified that the Defendant left some details out of his written statement, which was why he followed up with the recorded interview. Among the details the Defendant left out of the written statement, but admitted during the recorded follow-up, was that he digitally penetrated the victim. The Defendant also admitted during the follow-up interview that he knew the victim was twelve to fourteen years old. However, according to Detective Braden, the Defendant had earlier told him, before the recorded follow-up questioning, that he knew the victim was twelve at the time he engaged in sexual intercourse with her because both the victim and Mr. Colburn had told him her age.

By stipulation of the parties, the State also introduced evidence that the victim's anal genital exam was "without acute or chronic signs of trauma," which did not rule out the possibility of child sexual abuse, and that the examination of the victim's shirt and underwear by a serologist with the Tennessee Bureau of Investigation did not indicate the presence of semen on either the underwear or the shirt or the presence of blood on the shirt.

The Defendant elected not to testify and rested his case without presenting any evidence. Following deliberations, the jury found him guilty of the two counts of child rape and guilty of contributing to the delinquency of a minor. The jury found him not guilty of the other counts of the indictment. The trial court subsequently sentenced the Defendant to concurrent terms of twenty-eight years at 100% for each of the child rape convictions, to be served concurrently with an 11 month, 29 day sentence at 75% for the misdemeanor contributing to the delinquency of a minor conviction.

No timely motion for a new trial was filed in this case. On January 13, 2017, the trial court appointed appellate counsel "to explore, and if appropriate, pursue a petition for post-conviction relief and the issue of late filings needed to effectuate appeal[.]" On March 20, 2017, the trial court entered an order directing appellate counsel "to pursue the direct appeal[.]" Appellate counsel filed a motion to late-file the notice of appeal, and on July 21, 2017, this court granted the motion.

## ANALYSIS

The Defendant contends on appeal that the evidence is insufficient to sustain his child rape convictions. In support, he cites, among other things, the victim's admission that she was intoxicated, the victim's inability to recall many of the details of the time, Mr. Colburn's testimony that he had to tell the victim what had occurred, and the fact that there was no physical evidence connecting the Defendant to the alleged crimes. The State responds by arguing that the evidence, which includes the victim's and Mr. Colburn's testimony, as well as the Defendant's confession, was more than sufficient for the jury to find the Defendant guilty of the offenses beyond a reasonable doubt. We agree with the State.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). It is not the role of this court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W. 2d 913, 914 (Tenn. 1982).

The Defendant was convicted of two counts of rape of a child based on his digital and penile penetration of the twelve-year-old victim. Rape of a child is defined as "the

unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, . . . or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body[.]" Id. § 39-13-501(7).

Viewed in the light most favorable to the State, the evidence was more than sufficient for a rational jury to find the Defendant guilty of both counts of child rape beyond a reasonable doubt. The victim testified that she awoke to find the Defendant lying on top of her and penetrating her vagina with his penis and his fingers. Mr. Colburn testified that he saw the Defendant lying on top of the victim, that he recognized what was going on, and that the Defendant admitted having had sexual intercourse with the victim as well as having "fingered" her. Finally, the Defendant admitted in his statements to police that he had penetrated the victim with his penis and with his fingers and that he knew at the time that she was only twelve years old. We conclude, therefore, that the evidence is sufficient to sustain the Defendant's convictions for child rape.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court. However, we note the verdict forms indicate the jury found the Defendant not guilty on the charges of rape and aggravated sexual battery, but the judgment forms indicate those charges were dismissed. We therefore remand for entry of corrected judgment forms as to these charges.

_____
ALAN E. GLENN, JUDGE

- 8 -