IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 29, 2019, at Knoxville

**STATE OF TENNESSEE v. TOMMIE TAYLOR**

**Appeal from the Criminal Court for Shelby County**
**No. 16-03249     Lee V. Coffee, Judge**

_____

**No. W2018-02269-CCA-R3-CD**

_____

The defendant, Tommie Taylor, was convicted by a Shelby County Criminal Court jury for possession of a firearm by a convicted felon. On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction, arguing the State failed to prove beyond a reasonable doubt the defendant was the person who shot the victim. After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, J., joined.

Mark Mesler, Memphis, Tennessee, for the appellant, Tommie Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case stems from the shooting of the victim, Kevin Wade, on December 21, 2015. The defendant and the victim each rented a room in the same rooming house, and at the time of the shooting, the defendant was the only other occupant of the rooming house.

On the evening of December 21, 2015, the victim, a tow truck driver at the time, came home after work and saw the defendant standing in the defendant's bedroom

doorway. The victim owed the defendant ten dollars for cocaine the defendant sold him two days earlier. The two had a brief encounter in the common area between their bedrooms, during which the defendant asked the victim "[d]o you have my money?" The victim told the defendant he did not have any cash because he only received credit card receipts from the tows that evening. As the victim walked to his bedroom door, the defendant stated, "I been waiting on your a**." The defendant then shot the victim in the back as the victim turned to open his door. The victim looked at the defendant and said, "[y]ou shot me about ten dollars?" The defendant stated, "I ain't finished with yo[ur] a**." The victim entered his bedroom to escape being shot again. The defendant, however, shot the victim's bedroom door. Once the victim heard the defendant leave, he called 9-1-1.

The victim testified he "start[ed] to lose [his] awareness" during the 9-1-1 call, and went to his bed to lie down. When the dispatcher asked the victim who shot him, the victim stated, "[j]ust come on, and I'll tell you when you get here." When asked on cross-examination why he did not tell the dispatcher the defendant shot him, the victim testified it was because he was in shock. When police officers arrived on the scene, the victim told them "Tony" shot him because the victim knew the defendant by that name. The victim also told the officers the defendant shot him because he owed the defendant ten dollars. However, he did not mention the money was for cocaine.

Because the victim is partially blind, he had to leave the witness stand and approach the defendant in order to make an in-court identification. He identified the defendant and testified he was "very certain" the defendant is the person who shot him.

On cross-examination, the victim admitted he used cocaine "[m]aybe once or twice a day," every other day, but stated he did not use cocaine the day of the shooting, nor was he under the influence of anything else.

Officer Alexander Moody of the Memphis Police Department ("MPD") responded to the 9-1-1 call. Officer Moody was accompanied by another officer when he arrived at the rooming house and knocked on the front door. The officers opened the door, and the officers saw the victim lying face down on the floor. Officer Moody observed a gunshot wound to the victim's lower back. The officers searched the house, but did not find any weapons, suspects, or additional victims. Officer Moody testified the only information he obtained from the victim was that the shooter's name was "Tony."

MPD Officer Jeffrey Garey went to the rooming house later that evening to investigate. He did not find any weapons or shell casings, but he photographed several blood spots throughout the house. He testified the victim's bedroom door appeared to have been shot with a shotgun. When asked where it appeared the victim was standing

when he was shot, Officer Garey testified that "[t]he only way I can say for sure . . . would be at the [victim's] bedroom door." Officer Garey reached this conclusion based on the fact that he found blood spots inside the victim's bedroom but not in the common area between the bedrooms.

MPD Detective Kenneth Hale visited the victim at the hospital on December 26, five days after the shooting. Based on the victim's description of the shooter, Detective Hale prepared a six-person photographic lineup, which included a photograph of the defendant. According to Detective Hale, the victim identified the defendant as the shooter from the lineup. On December 28, 2015, MPD Officer Jason Terry arrested the defendant at the Regency Inn, where he found the defendant hiding under a bed in a hotel room.

The defendant was charged with attempted first degree murder, reckless endangerment by discharging a firearm into a habitation, employing a firearm during the commission of or attempt to commit a felony, and unlawful possession of a firearm by a convicted felon. At the completion of trial, the jury convicted the defendant of reckless endangerment by discharging a firearm into a habitation and unlawful possession of a firearm by a convicted felon. The defendant was acquitted on the remaining charges. After hearing the defendant's motion for a new trial, the trial court concluded the facts did not support a conviction for reckless endangerment by discharging a firearm into a habitation. Accordingly, the trial court reversed that conviction. However, the trial court upheld the defendant's remaining conviction, stating that "[t]here is more than enough evidence that a reasonable trier of fact could have found -- in fact should have found -- [the defendant] guilty of being a convicted felon in possession of a firearm." This timely appeal followed.

## ANALYSIS

The defendant argues no rational trier of fact could have found the State proved beyond a reasonable doubt the defendant possessed a firearm. Specifically, he argues the only evidence the defendant was the person who shot the victim was the testimony of the victim himself, and the victim's testimony contains too many problems to sufficiently establish the defendant possessed a weapon. We disagree.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of

fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The identity of the perpetrator is "an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). The question of identity is a question of fact left to the trier of fact to resolve. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

The jury found the defendant guilty of unlawful possession of a firearm by a convicted felon. As charged in this case, unlawful possession of a firearm by a convicted felon occurs when any person who has previously been convicted of a felony involving the use of or attempted use of force, violence, or a deadly weapon subsequently unlawfully possesses a firearm. Tenn. Code Ann. § 39-17-1307(b)(1)(A). The defendant stipulated at trial that he has two prior felony convictions involving the use or attempted use of violence. Accordingly, the only issue on appeal is whether a rational trier of fact could have found the defendant possessed a firearm in this case.

The defendant argues the evidence was insufficient because there were multiple issues with the victim's testimony. Specifically, the defendant notes the following: the victim did not tell the dispatcher the name of the shooter during the 9-1-1 call; the victim told the responding officers the shooter's name was "Tony"; the defendant was not

present when the officers arrived; there were no shell casings or weapons at the residence; there were no blood spots in the common area outside the bedrooms; the victim did not tell the responding officers about the cocaine, despite admitting he used cocaine once or twice a day; and the victim is partially blind.

Despite the defendant's stance on these matters, the record revealed the victim identified the defendant from a photographic line-up and made an in-court identification of the defendant. Also, there was no dispute that the victim was shot, and the only other person living at the rooming house at the time of the shooting was the defendant. Finally, when the defendant was arrested, he was found, not living in his room at the rooming house, but hiding under a bed in a local hotel. It is well-established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof. *State v. Crawford,* 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982). As this Court held in *State v. Williams,* 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981), the testimony of a victim, by itself, is sufficient to support a conviction. In this case, the victim identified the defendant as the individual who shot him. Such testimony is sufficient to support the defendant's convictions. Accordingly, we affirm the trial court.

_____
J. ROSS DYER, JUDGE